405 S.E.2d 642

**Margaret G. CARGILL, Administratrix of the Estate of Angel Teresa Cargill, Plaintiff Below, Appellant,**

v.

**BALLOON WORKS, INC., a North Carolina Corporation; Joe M. Holt, Jr., d/b/a Greenbrier Balloon, Inc.; Joe M. Holt, Jr.; and Foxfire, Inc., a West Virginia Corporation, Defendants Below**

**Balloon Works, Inc., a North Carolina Corporation, Defendant Below, Appellee.**

**Brenda PERKINS, Administratrix of the Estate of Richard E. Perkins, Plaintiff Below, Appellant,**

v.

**BALLOON WORKS, INC., a North Carolina Corporation; Joe M. Holt, Jr., d/b/a Greenbrier Balloons, Inc.; and Joe M. Holt, Jr., Defendants Below**

**Balloon Works, Inc., a North Carolina Corporation, Defendant Below, Appellee.**

**No. 19674.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 9, 1991.

Decided May 24, 1991.

Barbara H. Lupton, James A. McKowen, Hunt & Wilson, Charleston, for appellants.

Daniel R. Schuda, Steptoe & Johnson, Charleston, for appellees.

PER CURIAM:

This is an appeal by Brenda Perkins, administratrix of the estate of Richard E. Perkins, deceased, and Margaret Cargill, administratrix of the estate of Angel Cargill, deceased, from a final order of the Circuit Court of Putnam County entered on April 4, 1989. The appellants contend that the trial court erred by refusing to allow the appellants' witness, Peter Asp, to testify as an expert and to give opinion evidence in support of the appellants' theory of liability. We agree with the contention of the appellants and therefore reverse the decision of the Circuit Court of Putnam County.

I.

On April 20, 1980, appellant Brenda Perkins' decedent, Richard Perkins, piloted a hot air balloon manufactured and designed by the appellee, Balloon Works, Inc. (hereinafter "Balloon Works"). Mr. Perkins' brother, Jerry Perkins, and Margaret Cargill's decedent, Angel Cargill, were passengers in the balloon. During a flight, a small tear appeared at the bottom of the balloon envelope. The tear continued upward through the balloon envelope and stopped at the top of the balloon near the area of a heavy circumferential load tape. The balloon envelope collapsed and descended to the ground. All three occupants were killed.

Separate civil actions, alleging negligence in the manufacture and design of the balloon, were instituted against the appellee by the appellants. Appellant Brenda Perkins, administratrix of the estate of her late husband, Richard E. Perkins, filed her civil action against Balloon Works, as well as other defendants who are not parties to this appeal, on August 11, 1981, in the Circuit Court of Putnam County. Appellant Margaret Cargill, administratrix of the estate of her late daughter, Angel Cargill, filed her civil action against Balloon Works and the other defendants on March 19, 1982, in the Circuit Court of Kanawha County. By order dated October 29, 1985, the Cargill action was transferred to the Circuit Court of Putnam County, and by order dated November 5, 1987, the two actions were consolidated for trial in the Circuit Court of Putnam County.

Trial by jury of the consolidated cases began on July 24, 1988. In support of their theory of negligent manufacture and design of the balloon, the appellants attempted to introduce the opinion testimony of Peter Asp and sought to have him qualified as an expert witness. The trial court, however, found that Mr. Asp was not qualified to give expert opinion testimony with respect to the appellants' theory of the case, because Mr. Asp had no training or exper-

tise in the specific area of hot air balloon design and manufacture. Consequently, absent the evidence sought to be introduced through the appellants' sole expert, the trial court found that the appellants had failed to present any evidence of negligence or defective manufacture or design and directed a verdict in favor of the appellees.

The appellants vouched the record with Mr. Asp's testimony and now appeal from the lower court's judgment order entered on April 4, 1989. On April 12, 1989, the appellants filed a motion for a new trial, and their motion was denied by the lower court on September 7, 1989.

## II.

During the trial of this matter, the appellants attempted to introduce expert testimony in support of their theory of negligence in the design or manufacture of the balloon. Specifically, the appellants' theory of the case may be summarized as follows:[1]

1. that Balloon Works, as manufacturer of the balloon, had negligently designed the balloon by using only one "load tape" (a heavy circumferential band of webbing) located in the top portion of the balloon envelope.

2. that all other major balloon manufacturers other than Balloon Works design their balloons with three load tapes, one at the bottom of the balloon envelope, one just below the equator, and one in the top portion of the balloon envelope.

3. that load tapes are capable of stopping small tears in the balloon envelope, such as the tear in the present case, from becoming large tears which destroy the entire balloon envelope.

4. that the tear in the present case did stop when it reached the single load tape in the top portion of the balloon envelope.

5. that the tear in the present case would not have propagated and the balloon accident would not have occurred if the balloon had been equipped with three load tapes.

The appellants offered Peter Asp, a certified balloon pilot with over 250 hours of flight time, as an expert witness. Mr. Asp's credentials, qualifications, and experience also included his activities as the manager of a commercial ballooning operation, operator of a hot air balloon station providing services and repairs for approximately fifty balloons annually, trainer of student balloon pilots, and salesman of balloons. Mr. Asp also possessed a certificate entitling him to conduct balloon repairs and inspections, had lectured on balloon safety, and operated a repair shop certified to service most major manufacturers of balloons. He had written articles dealing with balloons, weather conditions, repair, and parts, and was personally familiar with the type of balloon in question in this action, the Balloon Works Firefly Model 7.

With regard to the specific balloon involved in this accident, Mr. Asp personally visited the crash scene and spoke with eyewitnesses. He personally inspected the wreckage and the remnants of the balloon envelope. Furthermore, he examined topographical maps of the crash scene and reviewed materials concerning the crash, including the accident report compiled by the National Safety and Transportation Board.

Subsequent to the lower court's refusal to permit the introduction of testimony by Mr. Asp as an expert witness, counsel for the appellant vouched the record with Mr. Asp's expected testimony. He testified that other balloon manufacturers placed load tapes in locations both above and below the equator of a balloon envelope. Balloon Works, however, failed to equip its balloons, specifically the model in question, with the load tape in the bottom portion of the balloon envelope. Mr. Asp further testified that if the balloon in question had been so equipped, the tear which originated in the bottom portion of the balloon envelope would have stopped when it reached

1. The elements of the appellants' theory of the case, as set forth in the brief filed in their behalf, are paraphrased by this Court.

the lower load tape, rather than propagating upward to the load tape in the top portion of the envelope. If the tear had stopped at a load tape in the bottom portion of the balloon envelope, Mr. Asp testified that the balloon envelope would have retained enough shape to allow the pilot the control his descent in a manner similar to that of a parachute descent.

In disallowing the introduction of Mr. Asp's testimony as an expert witness, the trial court appears to have made a distinction between Mr. Asp's general qualifications as a ballooning expert and his specific qualifications as an expert in balloon design or manufacture. As the appellees have emphasized, Mr. Asp is not a licensed aeronautical engineer and does not have a degree in aeronautical engineering or any other field of engineering or balloon design. He has neither designed nor manufactured a hot air balloon and has never been employed by a designer or manufacturer of balloons. Furthermore, he has never studied the selection or use of particular fabrics in balloons, has never before this incident investigated a balloon accident, and did not obtain his repairman's certificate until five years after the accident in question. Mr. Asp did, however, possess his repairman's certificate at the time his testimony was sought to be introduced.

The appellees also stressed that Mr. Asp obtained his repairman's certificate without any test or examination and that this certification only required that he demonstrate to the Federal Aviation Administration that he possessed the repair manual for each of the balloons he was certified to repair and the proper equipment to make the repairs. Mr. Asp was certified to service Balloon Works Balloons, as well as Arrow Star, Raven, Thunder Bolt, Cameron, and Adams Balloons.

Thus, while Mr. Asp could certainly have been qualified as an expert in repairing balloons and in general ballooning skills, a question was raised regarding Mr. Asp's qualification in the specific area of balloon design and manufacture. The lower court noted the distinction and held that Mr. Asp was not qualified as an expert in that specific area.

III.

Rule 702 of the West Virginia Rules of Evidence governs the admissibility of opinion testimony by experts and provides as follows:

Rule 702. Testimony by Experts. If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

In interpreting Rule 702 in *Ventura v. Winegardner*, 178 W.Va. 82, 86, 357 S.E.2d 764, 768 (1987), we recognized that "Rule 702 liberally allows a witness to testify as an expert" and stated that the "key test is whether the witness has specialized knowledge that will assist the trier of fact." In *Ventura*, we encountered a situation wherein a college tennis player had been injured in a fall from an unguarded embankment on the premises of a Holiday Inn. Upon objection by Holiday Inn to various experts used by the plaintiff to prove her injury, we examined the qualifications of the four experts in question. The qualifications of the first expert, an orthopedic surgeon, were in complete congruence with the issue sought to be proven, an injury to the plaintiff's knee. 178 W.Va. 86, 357 S.E.2d at 768. Consequently, we summarily dismissed Holiday Inn's objection to that witness. *Id.*

With regard to another witness, a vocational counsellor, we held that he was not appropriately qualified as an expert. *Id.* He was called by the plaintiff to testify with regard to what her future earnings would have been as a tennis professional. While he was a vocational expert, he knew very little about tennis and had absolutely no training or experience regarding tennis professionals. Furthermore, he based his opinion of the plaintiff's anticipated future earnings exclusively upon an issue of *Tennis Week Magazine* which had reported the earnings of the top forty ranked players in

the country. *Id.* We held that he was not qualified to testify as an expert regarding tennis salaries or the plaintiff's anticipated future earnings. *Id.* 178 W.Va. at 86–87, 357 S.E.2d at 768–69.

The orthopedic surgeon was qualified in the precise area to be discussed at trial, and the vocational expert had absolutely no specialized knowledge of tennis salaries beyond that of an average lay person. Consequently, determinations of the qualifications of those two individuals were easily made, and the liberal or strict interpretation of W.Va.R.Evid. 702 was not called into question. However, for purposes of our discussion in the present case, it was with regard to two other expert witnesses in *Ventura* that the more difficult questions involving the interpretation of W.Va. R.Evid. 702 were encountered. The two other witnesses were neither completely and unquestionably qualified to testify regarding a specific issue nor completely unqualified to so testify. The first of those witnesses was a professor of industrial engineering and director of an Occupational Health and Safety Engineering Program called to testify that the embankment in question was not properly guarded. However, he had admittedly not engaged in any specific research regarding unguarded slopes of the type in question. *Ventura,* 178 W.Va. at 86, 357 S.E.2d at 768. We stated that "[d]espite his lack of knowledge of unguarded slopes, it is obvious from his education and background that he would have more than a passing knowledge of the subject." *Id.* We concluded our inquiry into that witness' qualifications by stating that "[h]is insights would assist the jury in making a decision." *Id.*

Another witness, the plaintiff's high school tennis coach, was called to testify regarding the plaintiff's abilities. That witness, however, had not seen the plaintiff play tennis in college and could consequently base his testimony only upon her record in college and his memory of her high school tennis ability. He had been involved in tennis since he was nine years of age, had sponsored two tennis players on the professional circuit, and had played on the circuit himself. We concluded that "these strengths, plus a familiarity with [the plaintiff], would make his opinions helpful to the jury." *Id.*

Thus, with regard to the latter two witnesses in *Ventura,* while their qualifications were not in precise accord with the issues to be addressed, we found that their specialized knowledge would assist the trier of fact and interpreted W.Va.R.Evid. 702 liberally to permit them to testify as expert witnesses.

■ " ' "Whether a witness is qualified to state an opinion is a matter which rests within the discretion of the trial court and its ruling on that point will not ordinarily be disturbed unless it clearly appears that its discretion has been abused." Point 5, syllabus, *Overton v. Fields,* 145 W.Va. 797 [117 S.E.2d 598 (1960) ].' Syllabus Point 4, *Hall v. Nello Teer Co.,* 157 W.Va. 582, 203 S.E.2d 145 (1974)." Syl.Pt. 12, *Board of Educ. v. Zando, Martin & Milstead, Inc.,* 182 W.Va. 597, 390 S.E.2d 796 (1990). *Accord Syl.Pt. 3, State v. Dietz,* 182 W.Va. 544, 390 S.E.2d 15 (1990). However, where the evidence demonstrates, as in the present case, that the individual sought to be introduced as an expert witness is qualified by knowledge, skill, experience, training, or education as an expert and that the individual's specialized knowledge will assist the trier of fact, it is an abuse of the trial court's discretion to refuse to qualify that individual as an expert.

■ West Virginia Rule of Evidence 702 enunciates the standard by which the qualification of an individual as an expert witness will be determined. It cannot encompass every nuance of a specific factual matter or a particular individual sought to be qualified. It simply requires that the witness must, through knowledge, skill, experience, training, or education, possess scientific, technical, or other specialized knowledge which will assist the trier of fact to understand the evidence or to determine a fact in issue. It cannot be interpreted to require, as the appellees appear to suggest, that the experience, education, or training of the individual be in complete congruence with the nature of the issue

sought to be proven. Specifically, Mr. Asp, in order to be appropriately qualified as an expert, does not have to possess expertise regarding the narrow, limited issue of balloon design. The evidence indicates that he has sufficient qualification regarding balloon flight, repair, maintenance, operation, training, inspection, and safety. Furthermore, he is familiar with the construction of the balloon model involved in the accident and has inspected the remnants of the actual balloon envelope in question. He has an understanding of the mechanical operations conducted during balloon flight and is capable of explaining the various styles of construction of balloon envelopes.

Certainly, Mr. Asp's knowledge of ballooning and balloon envelopes, though not based specifically upon an engineering or design degree, would be helpful to the jury's understanding of the issues involved in this case. Once a witness is permitted to testify, it is within the province of the jury to evaluate the testimony, credentials, background, and qualifications of the witness to address the particular issue in question. The jury may then assign the testimony such weight and value as the jury may determine. Furthermore, once introduction of an expert's testimony is permitted, the opposing party may exercise its right of cross-examination in which questions regarding the expert's credentials, training, experience, and qualifications may be raised and any perceived weaknesses may be revealed.

Based upon the foregoing, we hold that the lower court's refusal to qualify Mr. Asp as an expert was an abuse of discretion, and we therefore reverse the decision of the Circuit Court of Putnam County and remand this case for a new trial.

Reversed and remanded.