412 S.E.2d 767

**Ernestine TABOR and Ronald M. Tabor, Plaintiffs Below, Appellees,**

v.

**Jaldir LOBO, M.D., Defendant Below, Appellant.**

**No. 19823.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 17, 1991.

Decided Dec. 17, 1991.

---

Steven K. Nord, Wood, Grimm & Delp, Huntington, for appellant.

Herbert H. Henderson, Gail Henderson–Staples, Henderson, Henderson & Staples, Huntington, for appellees.

PER CURIAM:

This appeal by the defendant, Jaldir Lobo, M.D., is from a final order of the Circuit Court of Cabell County, West Virginia, which set aside a jury verdict in favor of the defendant and granted a new trial to the plaintiffs-appellees, Ernestine Tabor and Ronald M. Tabor, her husband, on the ground that the jury verdict in this action alleging medical malpractice was contrary to the clear weight of the evidence. This Court reverses the ruling of the circuit court, reinstates the jury verdict and enters judgment for the defendant on that verdict, for the reasons stated in this opinion.

I

On September 22, 1983, Dr. Charles Jarrell surgically removed a lymph node from the neck of Ernestine Tabor, one of the plaintiffs-appellees. Less than two weeks after the removal of the lymph node, Mrs. Tabor complained to her family physician of pain in the neck and shoulder area. That physician referred her to a surgeon, who in turn consulted the defendant-appellant, Dr. Lobo. Almost *eight weeks after* the removal of the lymph node, Mrs. Tabor was examined by Dr. Lobo, a neurosurgeon. He performed a routine neurological examination. The Tabors contend that on that date (November 15, 1983) Dr. Lobo was negligent in not performing an electromyography. During the removal of the lymph node, a branch of the spinal accessory nerve had been severed, causing Mrs. Tabor to have trouble raising her right arm. Dr. Lobo suspected damage to a branch of the spinal accessory nerve, but believed conservative treatment in the form of physical therapy would alleviate the problem.

The problem did not get any better, and, therefore, Mrs. Tabor was hospitalized by Dr. Lobo from January 25, 1984 to February 1, 1984, during which time Dr. Lobo performed an electromyography. It confirmed damage to a branch of the spinal accessory nerve controlling movement of the trapezius muscle. Dr. Lobo instructed Mrs. Tabor to restrict the movement of her right arm and shoulder and discharged her from the hospital. She was to return to Dr. Lobo's office in six weeks.

Mrs. Tabor did not, however, keep her March 1, 1984 appointment with Dr. Lobo. Instead, she went to Dallas in June, 1984, nine months after the lymph node surgery. A doctor there operated on her unsuccessfully. According to expert testimony at the trial, the nerve damage existing at the time of the trial was permanent.

In this action before the Circuit Court of Cabell County ("the trial court"),[1] the plain-

1. Dr. Jarrell, who performed the lymph node    surgery in September, 1983, was named initially

tiffs' expert, Dr. Saypol, a general surgeon, testified, without examining Mrs. Tabor, that there was a 75% chance of a completely successful repair of this type of nerve damage if the repair is made *up to five to seven weeks after* the nerve is severed.[2]

On the other hand, Dr. Berger, one of the Tabors' neurological experts, examined Mrs. Tabor for purposes of this litigation. He submitted a report, admitted into evidence by Dr. Lobo, without timely objection by the Tabors, indicating that "there was an opportunity for improvement of her function [of the trapezius muscle by repair of the branch of the spinal accessory nerve] even at nine months" after the lymph node surgery in which that nerve was accidentally severed. Dr. Berger also opined that Mrs. Tabor "may well have had some return of function of the trapezius muscle" and that "the return of [such] function was related to the repair of the nerve" after nine months. Because of his adverse opinion, the Tabors did not call Dr. Berger as a witness.

Dr. Lobo did not testify at the trial because he had suffered a stroke. His proffered expert, a neurosurgeon (Dr. Persing), was not able to attend the trial due to a scheduling conflict.[3]

The jury returned a verdict in favor of Dr. Lobo. The Tabors moved for a new trial on the ground that the verdict was contrary to the clear weight of the evidence. The trial court granted that motion.

## II

In syllabus point 6 of *McClung v. Marion County Commission,* 178 W.Va. 444, 360 S.E.2d 221 (1987), the Court held:

'In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evi-

dence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.' Syl. pt. 5, *Orr v. Crowder,* [173] W.Va. [335], 315 S.E.2d 593 (1983), *cert. denied,* 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984).

In addition, "[q]uestions of negligence, due care, proximate cause and concurrent negligence present issues of fact for jury determination when the evidence pertaining to such issues is conflicting or where the facts, even though undisputed, are such that reasonable men may draw different conclusions from them." Syl. pt. 5, *Hatten v. Mason Realty Co.,* 148 W.Va. 380, 135 S.E.2d 236 (1964). *Accord,* syl. pt. 3, *Massey v. Jim Crockett Promotions, Inc.,* 184 W.Va. 441, 400 S.E.2d 876 (1990).

■ Other principles applicable here include the following. The jury has the right to weigh the testimony of all witnesses, experts and otherwise. Thus, the jury is to give only as much weight and credit to expert testimony as the jury deems it entitled to when viewed in connection with all the circumstances. Moreover, a jury is not bound to accept as conclusive the testimony even of an unimpeached witness. *Martin v. Charleston Area Medical Ctr.,* 181 W.Va. 308, 311–12, 382 S.E.2d 502, 505–06 (1989), *cert. denied sub nom. Leef v. Martin,* 493 U.S. 1071, 110 S.Ct. 1115, 107 L.Ed.2d 1022 (1990). Once a witness, including an expert witness, is permitted to testify, it is within the province of the jury to evaluate the testimony, credentials, background and qualifications of the wit-

---

as a defendant in this action, but he was dismissed as a defendant upon approval of the Tabors' settlement with him before the trial.

2. Dr. Lobo did not challenge the admissibility of Dr. Saypol's testimony. Dr. Lobo here argues only that the jury reasonably assigned little weight to Dr. Saypol's testimony because he was not a neurosurgeon and had not examined the patient.

For a discussion of the admissibility of medical expert testimony in a medical malpractice action see *Gilman v. Choi,* 185 W.Va. 177, 181–82, 406 S.E.2d 200, 204–05 (1990).

3. Dr. Lobo's motion for a continuance to allow Dr. Persing to testify at the trial was denied because the start of the trial had been continued three previous times at Dr. Lobo's request.

ness to address the particular issue in question. The jury may then assign the testimony such weight and value as the jury may determine. *Cargill v. Balloon Works, Inc.*, 185 W.Va. 142, 147, 405 S.E.2d 642, 647 (1991).

We now apply all of these principles to this case. The jury was entitled to give, and assumably gave, more weight to the testimony of Dr. Berger than to the testimony of Dr. Saypol. Dr. Berger is a neurosurgeon, like Dr. Lobo, and Dr. Berger examined Mrs. Tabor. Dr. Berger opined that the nerve in question was reparable, at least to a certain extent, even at nine months after it was damaged. Dr. Saypol, on the other hand, is a general surgeon and did not examine Mrs. Tabor. His testimony conflicted with Dr. Berger's testimony in that Dr. Saypol opined that there was little chance of successful repair at all beyond five to seven weeks after the nerve in question was damaged. Even if that were true, Mrs. Tabor did not go to Dr. Lobo until almost eight weeks after the nerve was severed. Therefore, the jury reasonably could find that Dr. Lobo was not negligent, as the injury was virtually irreparable by the time he first saw the patient. In any event, the evidence supports the jury verdict for the defendant, and the trial court improperly set such verdict aside.

The Court concluded in syllabus point 6 of *Western Auto Supply Co. v. Dillard*, 153 W.Va. 678, 172 S.E.2d 388 (1970), that "[w]hen a verdict of a jury has been improperly set aside by the trial court, this Court will reinstate the verdict and render judgment upon such verdict."

Accordingly, we reverse the judgment of the trial court awarding a new trial, reinstate the jury verdict and enter judgment for Dr. Lobo on that verdict.

Reversed.