460 S.E.2d 771

STATE of West Virginia, Plaintiff Below, Appellee

v.

Forrest WOOD, Defendant Below, Appellant.

No. 22575.

Supreme Court of Appeals of West Virginia.

Submitted May 9, 1995.

Decided July 14, 1995.

Gregory J. Campbell and Julia B. Shalhoup, Campbell & Turkaly, Charleston, for appellant.

Darrell V. McGraw, Jr., Atty. Gen. and Amie L. Langfitt, Asst. Atty. Gen., Charleston, for appellee.

McHUGH, Chief Justice:

Following a one-day jury trial, the appellant, Forrest M. Wood, was convicted of two counts of first degree sexual assault and two counts of incest in the Circuit Court of Cabell County. The appellant was sentenced to prison terms of fifteen to thirty-five years on each of the first degree sexual assault counts and to five to fifteen years on each of the incest counts, with all sentences running consecutively.

The appellant appeals his convictions raising the following four assignments of error: (1) whether the admission of the testimony of Mr. Donald Pace, a teacher, wherein he stated that he determined the victim's allegations against the appellant were true before he

took any action regarding those allegations, was error; (2) whether the admission of the expert testimony of Elizabeth Brachna was error in that (a) she was not properly qualified as an expert, (b) she testified that the victim's allegations were credible, and (c) she based her testimony upon the child sexual abuse profile; (3) whether the appellant was denied effective assistance of counsel; and (4) whether the appellant was sentenced in violation of the *ex post facto* principles set forth in the West Virginia and United States Constitutions. For reasons set forth below, we affirm, in part, reverse, in part, and remand this case to the circuit court for the defendant's resentencing in accordance with this opinion.

### I.

The appellant married the mother of the victim, Betty A.,[1] in 1981, thereby becoming Betty A.'s stepfather. At trial, Betty A. testified that once or twice a week in 1989, when she was approximately eight or nine years old, she was forced to engage in various sexual acts with the appellant.[2] Betty A. first reported the sexual assaults in the spring of 1992 to her behavior disorder teacher, Donald Pace, who testified at trial. Additionally, Elizabeth Brachna, a licensed social worker, and Vicki Riley, a supervised psychologist[3] in private practice, who were qualified as experts on abused and assaulted children, both testified that in their opinion Betty A.'s behavior fit the profile of a sexually abused child. Betty A.'s mother's testimony supported Betty A.'s and the experts' testimonies. Conversely, the appellant testified that he did not sexually assault Betty A.

---

1. Since this case involves sensitive matters, we follow our traditional practice and use only the last initial of the juvenile involved in this case. *See State v. Michael S.*, 188 W.Va. 229, 230 n. 1, 423 S.E.2d 632, 633 n. 1 (1992). (citation omitted).

2. Though the record describes the sexual acts in graphic detail, considering our resolution of the issues in this case, it is not necessary to recount those facts in detail in this opinion.

3. Ms. Riley is working as a psychologist under the supervision of Dr. Betsy Evans until she obtains a license in psychology.

The appellant and Betty A.'s mother separated in November of 1989, and a divorce action soon ensued. The evidence at trial indicates that Betty A. has had no contact with the appellant since her mother and the appellant separated.

### II.

The appellant asserts that the admission of Donald Pace's testimony regarding the truthfulness of Betty A.'s allegations against the appellant was error. However, as the appellant concedes, the appellant's trial attorney did not object to the admission of this testimony.[4] Therefore, the admission of this testimony must invoke the plain error doctrine before this Court will reverse the appellant's conviction. In syllabus point 7 of *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995) this Court held that in order "[t]o trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *See also* syllabus point 4, in relevant part, *State v. England*, 180 W.Va. 342, 376 S.E.2d 548 (1988) (The plain error "doctrine is to be used sparingly and only in those circumstances where substantial rights are affected, or the truth-finding process is substantially impaired, or a miscarriage of justice would otherwise result.")

The appellant complains about the admission of the following testimony by Donald Pace:

Q [This excerpt of testimony occurs after Mr. Pace has testified that he did not report Betty A.'s allegations until he determined whether or not they were true] [by

---

4. We held the following in syllabus point 2 of *State v. Stewart*, 187 W.Va. 422, 419 S.E.2d 683 (1992): " ' "Error in the admission of testimony to which no objection was made will not be considered by this Court on appeal or writ of error, but will be treated as waived." Syl. Pt. 4, *State v. Michael*, 141 W.Va. 1, 87 S.E.2d 595 (1955).' Syllabus point 7, *State v. Davis*, 176 W.Va. 454, 345 S.E.2d 549 (1986)." However, *W.Va.R.Evid.* 103(d) states that "[n]othing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court."

the State] You indicated that you had come to the conclusion that [Betty A.] was not making this up; is that correct?

A  [by Mr. Pace] That's correct.

Q  Why do you say that?

A  Well, for one thing, after I had established a relationship with [Betty A.], I found out that when she was lying, if I pursued my questioning, she would always tell me the truth.

Q  Now, wait a minute. So, you're saying that [Betty A.] has lied to you?

A  In terms that she may deny that she had done something, and when I questioned her about that, she would often say, 'Oh, no, Mr. Pace, that wasn't me, I didn't do that, I didn't do that,' and when I pursued the matter, she would always own up to it.

Q  Always?

A  Well, to my knowledge, yes.

. . . .

Q  So, in your opinion, based on your work with [Betty A.], she's basically a truthful person?

A  Oh, yes. Now, qualifying that, if she could get out of trouble, she would.

. . . .

Q  ... Did you investigate [Betty A.'s allegations of sexual assault], to your satisfaction, to determine whether or not she was, in fact, telling you the truth?

A  Yes, I did because—in fact, we had—you know, I explained the severity of making an accusation like that.... [S]he at that time convinced me that she was telling the truth.

■  At the outset, we note that this issue involves the admission of testimony regarding the credibility of a witness. As observed by the United States Court of Military Appeals, "[t]here are three evidentiary stages which concern the credibility of witnesses at trial: bolstering, impeachment, and rehabilitation." *United States v. Toro*, 37 M.J. 313, 315 (C.M.A.1993). Bolstering occurs when a party seeks to enhance a witness's credibility before it has been attacked. *Id.* Bolstering is generally disallowed. Impeachment occurs anytime a witness's credibility is attacked, and it may be accomplished in several different ways including, *inter alia*, the following: a witness's character trait for untruthfulness pursuant to *W.Va. R.Evid.* 608(a); prior convictions pursuant to *W.Va.R.Evid.* 609(a); instances of misconduct not resulting in a conviction pursuant to *W.Va.R.Evid.* 608(b); and prior inconsistent statements pursuant to *W.Va.R.Evid.* 613.[5] *See Id.* Rehabilitation, which occurs after a witness's credibility has been attacked, also may be accomplished in a number of different ways including "explanations on redirect examination, corroboration, a character trait for truthfulness, or prior consistent statements." *Toro, supra* at 315 (citation omitted). Credibility issues concerning a witness may be addressed by questioning that witness or through the testimony of another witness.

---

**5.** *W.Va.R.Evid.* 608(a) states, in relevant part, "[t]he credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation[.]"

*W.Va.R.Evid.* 609(a) states, in pertinent part, that the credibility of an accused in a criminal case may be attacked by "evidence that the accused has been convicted of a crime ... but only if the crime involved perjury or false swearing." The credibility of a witness other than the accused may be attacked by "evidence that the witness has been convicted of a crime ... subject to Rule 403 ... if the crime was punishable by death or imprisonment in excess of one year ... and ... [by] evidence that the witness has been convicted of a crime ... [involving] dishonesty or false statement, regardless of the punishment." *Id.*

*W.Va.R.Evid.* 608(b) states, in relevant part, that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of a witness other than the accused (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."

*W.Va.R.Evid.* 613(b) states, in pertinent part, that "[e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interest of justice otherwise require."

■ Although not briefed by the appellant, the resolution of the issue before us involves an analysis of *W.Va.R.Evid.* 608. *W.Va.R.Evid.* 608(a) allows for the admission of evidence which either attacks or supports the credibility of a witness in the form of opinion or reputation subject to two limitations:

> The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness; and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

*W.Va.R.Evid.* 608(a).

The first limitation found in 608(a)(1), which states "the evidence may refer only to character for truthfulness or untruthfulness[,]" explicitly "permits [opinion] testimony concerning a witness's general character or reputation for truthfulness or untruthfulness but prohibits any [opinion] testimony as to a witness's truthfulness on a particular occasion." *State v. Rimmasch*, 775 P.2d 388, 391 (Utah 1989) (citations omitted). The rationale behind disallowing opinion testimony as to a witness's truthfulness on a particular occasion is that "it prevents trials from being turned into contests between what would amount to modern oath-helpers who would largely usurp the fact-finding function of judge or jury." *Id.* at 392. *See also United States v. Azure*, 801 F.2d 336, 341 (8th Cir. 1986) (The "opinion evidence went beyond the limitation in Rule 608(a)(1) of only addressing character for truthfulness and addressed the specific believability and truthfulness of [the witness's] story."); *People v. Koon*, 713 P.2d 410, 412 (Colo.Ct.App.1985) ("[N]either a lay nor expert witness may give opinion testimony with respect to whether a witness is telling the truth on a specific occasion." (citations omitted)).

We implicitly acknowledged the wisdom of the above rationale in syllabus point 7, in relevant part, of *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990), when we held that an expert on child sexual abuse "may not give an opinion as to whether he personally believes the child ... as [this] would improperly and prejudicially invade the province of the jury."

■ The second limitation found in *W.Va. R.Evid.* 608(a)(2), states "evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise[.]" This limitation disallows the bolstering of a witness's credibility. *See* 1 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 6.8(A)(1) (3d 1994) and 3 Jack B. Weinstein, et al., *Weinstein's Evidence* ¶ 608[08] (1995). After all, "a person's character is assumed to be good unless evidence exists to indicate otherwise." Cleckley, *supra* at § 6–8(A)(2). *See also* Weinstein, *supra* at ¶ 608[08] at 608–64. ("'[T]here is no reason why time should be spent in proving that which may be assumed to exist.'" (*quoting* Wigmore, *Evidence* § 1104 (3d ed. 1940)).

■ Moreover, *W.Va.R.Evid.* 608(a) is subject to the protections of *W.Va.R.Evid.* 402, which requires the evidence to be relevant; *W.Va.R.Evid.* 403, which requires the exclusion of evidence whose "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[;]" and *W.Va.R.Evid.* 611, which requires the court to protect witnesses from harassment and undue embarrassment. *See* Weinstein, *supra* ¶ 608[01] at 608–13 and Cleckley, *supra* at § 6–8(A)(2). Thus, the admissibility of evidence regarding a witness's character for truthfulness or untruthfulness is within the sound discretion of the trial judge, and depends upon the totality of the circumstances of a given case. *See Id.*

Accordingly, we hold that *West Virginia Rules of Evidence* 608(a) permits the admission of evidence in the form of an opinion or reputation regarding a witness's character for truthfulness or untruthfulness, subject to two limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness; and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or

otherwise. The admission of testimony pursuant to *W.Va.R.Evid.* 608(a) is within the sound discretion of the trial judge and is subject to *W.Va.R.Evid.* 402, which requires the evidence to be relevant; *W.Va.R.Evid.* 403, which requires the exclusion of evidence whose "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[;]" and *W.Va.R.Evid.* 611, which requires the court to protect witnesses from harassment and undue embarrassment.

■ In the case before us, we find that Mr. Pace's testimony violates the two limitations set forth in *W.Va.R.Evid.* 608 in that Mr. Pace gave his opinion as to Betty A's truthfulness on a specific occasion and testified as to her truthfulness before her character for truthfulness had been attacked. As we previously indicated, no objection was made at trial. Thus, we must determine if the admission of Mr. Pace's testimony was plain error. We conclude that it was not.

As we previously stated, Mr. Pace, who was Betty A.'s behavior disorder teacher, was the first person to whom Betty A. reported the sexual assaults. At trial, Mr. Pace, the State's first witness, testified that when Betty A. first told him of the sexual assault he did not immediately report her allegations because he wanted to make sure they were true.

■ However, the record reveals that there was no need for the prosecutor to engage in the questioning of Betty A.'s char-acter for truthfulness in that Betty A.'s credibility had not yet been attacked. In fact, Betty A.'s credibility was not an issue until the prosecutor made it an issue.[6] As we previously stated, a witness's character for truthfulness is assumed to be truthful until attacked. Thus, the admission of Mr. Pace's testimony regarding Betty A.'s character for truthfulness was error pursuant to *W.Va. R.Evid.* 608(a) because it was admitted before her character for truthfulness had been attacked. Furthermore, Mr. Pace's opinion testimony as to whether Betty A.'s allegations of sexual assault were believable is error pursuant to *W.Va.R.Evid.* 608(a) in that it improperly invades the province of the jury.

■ However, as the testimony above reveals, Mr. Pace was merely giving an historical account as to how he learned of Betty A.'s sexual assault allegations and as to how he determined what actions he should take regarding those allegations. Although Mr. Pace's testimony violates *W.Va.R.Evid.* 608(a), his testimony was not given for the purpose of determining Betty A.'s character for truthfulness which is the paramount concern of *W.Va.R.Evid.* 608, but rather was given as historical information. *Cf. United States v. Blackwell*, 853 F.2d 86 (2d Cir.1988) (*Fed.R.Evid.* 608(a) does not preclude testimony by an accused of his lack of a criminal record because such testimony is essentially background information); *Government of Virgin Islands v. Grant*, 775 F.2d 508, 513 n. 7 (3d Cir.1985) (The Court of Appeals for the

**6.** At least one court has noted that if a witness's character for truthfulness is eventually attacked during the trial after opening statements which indicate that the credibility of a witness will be attacked, then the admission of the testimony of a witness's truthful character before such attack is harmless error. *United States v. Beaty*, 722 F.2d 1090, 1097 (3d Cir.1983) ("In view of the inevitability of defense counsels' attack on [the witnesses'] credibility and the formidable assault which in fact was made in the defense openings, cross-examinations and summations, the error in the timing of the introduction of the [truthfulness promise] does not require reversal in this case[:]" the prosecutor elicited on direct examination that the witness had promised to tell the truth in connection with a plea bargain (citation omitted)).

Subsequent to Mr. Pace's testimony, the appellant's trial counsel did attack Betty A.'s character for truthfulness. Therefore, the State asserts that since Mr. Pace's testimony regarding Betty A.'s character for truthfulness would have been admissible once the appellant's trial counsel attacked her character for truthfulness, the admission of Mr. Pace's testimony in the facts before us was harmless error.

However, unlike the case above, the prosecutor had no indication in the opening statement of the appellant's trial attorney that Betty A.'s credibility would be attacked. Thus, it is arguable whether the appellant would have attacked Betty A.'s credibility if the prosecutor had not delved into the issue during Mr. Pace's testimony. Moreover, we do not condone this type of questioning because it could still amount to error which is not harmless depending on the totality of the circumstances in a given case.

Third Circuit noted that the line between background evidence and character evidence is blurred). Thus, although we find that the admission of the above testimony by Mr. Pace violates *W.Va.R.Evid.* 608(a), we recognize that it is a close call considering the purpose for which this testimony was introduced. *Cf. United States v. Toledo,* 985 F.2d 1462, 1469–70 (10th Cir.1993), *cert. denied,* ⎯ U.S. ⎯⎯, 114 S.Ct. 218, 126 L.Ed.2d 174 (1993) (An expert's statement in a case in which a child was kidnapped and sexually assaulted that the child's consistency in her story was " 'consistent with a high likelihood that this occurred' " did not warrant review under the plain error doctrine because it is a close call and therefore not an obvious error affecting the fundamental fairness of the trial).

Accordingly, although the admission of Mr. Pace's testimony regarding Betty A.'s character for truthfulness was error pursuant to *W.Va.R.Evid.* 608(a), given the context in which this particular testimony occurred we find that it does not "seriously affect[ ] the fairness, integrity, or public reputation of the judicial proceedings" thereby implicating review pursuant to the plain error doctrine. Syl. pt. 7, *Miller, supra.*

### III.

Although not clearly defined, it appears that the appellant raises the following three issues regarding the testimony of Elizabeth Brachna, who testified as an expert on abused and assaulted children, which are as follows: (a) whether Ms. Brachna was properly qualified as an expert; (b) whether Ms. Brachna's testimony regarding the truthfulness of Betty A.'s story violates syllabus point 7 of *Edward Charles L., supra;* and (c) whether the law in *Edward Charles L., supra,* regarding the admission of a child sexual abuse profile is a sound principle or whether the case should be overruled.

### A.

The appellant's trial counsel objected to Ms. Brachna being qualified as an expert on abused and assaulted children because she was not a treating psychiatrist or psychologist.

In syllabus point 7 of *Edward Charles L., supra,* this Court held that expert psychological testimony regarding child sexual abuse is permissible:

> Expert psychological testimony is permissible in cases involving incidents of child sexual abuse and an expert may state an opinion as to whether the child comports with the psychological and behavioral profile of a child sexual abuse victim, and may offer an opinion based on objective findings that the child has been sexually abused. Such an expert may not give an opinion as to whether he personally believes the child, nor an opinion as to whether the sexual assault was committed by the defendant, as these would improperly and prejudicially invade the province of the jury.

Furthermore, in syllabus point 5 of *Mayhorn v. Logan Medical Foundation,* 193 W.Va. 42, 454 S.E.2d 87 (1994) this Court stated:

> ' " ' "Whether a witness is qualified to state an opinion is a matter which rests within the discretion of the trial court and its ruling on that point will not ordinarily be disturbed unless it clearly appears that its discretion has been abused." Point 5, syllabus, *Overton v. Fields,* 145 W.Va. 797 [117 S.E.2d 598 (1960) ].' Syllabus Point 4, *Hall v. Nello Teer Co.,* 157 W.Va. 582, 203 S.E.2d 145 (1974)." Syllabus Point 12, *Board of Education v. Zando, Martin & Milstead,* 182 W.Va. 597, 390 S.E.2d 796 (1990).' Syl. pt. 3, *Wilt v. Buracker,* 191 W.Va. 39, 443 S.E.2d 196 (1993).

Appellant's contention that Ms. Brachna must have a certain educational background in order to testify as an expert on abused and assaulted children is misplaced. "[A] witness may be qualified as an expert by practical experience in a field of activity conferring special knowledge not shared by mankind in general[.]" Syl. pt. 2, in relevant part, *State v. Baker,* 180 W.Va. 233, 376 S.E.2d 127 (1988). For instance, in *Cargill v. Balloon Works, Inc.,* 185 W.Va. 142, 405 S.E.2d 642 (1991), we found that a certified pilot of hot air balloons had a sufficient background regarding the operation, safety, construction and flight of hot air balloons to be

qualified as an expert in the design and manufacture of a hot air balloon that crashed even though the pilot did not possess an engineering or design degree.

We concluded in *Cargill* that *W.Va. R.Evid.* 702, which enunciates the standard by which the qualification of an expert is determined, "cannot be interpreted to require ... that the experience, education, or training of the individual be in complete congruence with the nature of the issue sought to be proven." *Id.* at 146–47, 405 S.E.2d at 646–47.[7] Instead, a witness may be qualified as an expert based upon his or her knowledge, skill, experience, training, or education. *Board of Educ. v. Zando, Martin & Milstead, Inc.,* 182 W.Va. 597, 390 S.E.2d 796 (1990) (This Court held that a witness was qualified as an expert on structural matters even though he had not been educated as a structural engineer because of his experience in the construction business).

Thus, Ms. Brachna need not be a treating psychiatrist or psychologist as asserted by the appellant. The facts indicate that Ms. Brachna is a licensed social worker who works as a counselor with victimized children. Additionally, Ms. Brachna has a bachelor's degree in sociology and an uncompleted master's degree in behavioral disorders. Most importantly, the record reveals that Ms. Brachna has nine years of experience with troubled adolescent girls in group homes, and that she has seen more than one hundred abused and/or traumatized children.

As the State points out, other states have qualified nonpsychologists as experts on abused and assaulted children because of their experience and training. *See, e.g., People v. Pollard,* 225 Ill.App.3d 970, 168 Ill.Dec. 61, 66, 589 N.E.2d 175, 180 (Ct.1992), *appeal denied,* 145 Ill.2d 641, 173 Ill.Dec. 11, 596 N.E.2d 635 (1992) (assault program worker, who was a foster mother specializing in sexually abused children); and *Commonwealth v. Thayer,* 418 Mass. 130, 634 N.E.2d 576 (1994) (licensed psychiatric social worker). Accordingly, based on Ms. Brachna's training and experience of working with abused and traumatized children, the trial court did not abuse its discretion by qualifying Ms. Brachna as an expert on abused and assaulted children.

### B.

The appellant next contends that Ms. Brachna's testimony regarding the truthfulness of Betty A.'s allegations violates syllabus point 7, in relevant part, of *Edward Charles L., supra,* which states: "Such an expert may not give an opinion as to whether he personally believes the child, nor an opinion as to whether the sexual assault was committed by the defendant, as these would improperly and prejudicially invade the province of the jury." As we previously explained, *W.Va.R.Evid.* 608(a) prohibits any testimony as to a witness's truthfulness on a particular occasion.

There are two questionable times in which Ms. Brachna's testimony borders on giving an opinion as to whether Betty A. was being truthful. The first incident occurred in the following exchange:

Q [by the State] I do not want to relate specifically what [Betty A.] told you. That is not my purpose in having you testify. I only want you to inform this Court whether or not you made observations of [Betty A.] in her testimony which would cause you to be able to render to this Court an opinion as to whether or not [Betty A.] fit within the profile that you have previously described to this Court as that of a sexually abused child?

Pursuant to *West Virginia Rules of Evidence* 702 an expert's opinion is admissible if the basic methodology employed by the expert in arriving at his opinion is scientifically or technically valid and properly applied. The jury, and not the trial judge, determines the weight to be given to the expert's opinion.

7. *W.Va.R.Evid.* 702 states:
   **Testimony by Experts.** If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.
   Additionally, this Court held the following in syl. pt. 4 of *Mayhorn, supra:*

A. [by Ms. Brachna] Yes. When I do a taped interview, there are criteria I am watching and observing for.... [I]t ... allows us to look back and check to see if the age and the emotion matches the trauma the child is reporting. One particular criterion I look for when doing this is if the child or adolescent uses age appropriate terminology for their body, their body parts, the alleged perpetrator's body parts[.] ... I also start each taped interview with questions which helps me determine if the child can determine right from wrong, or more importantly, truth from a lie, or also show some type of suggestibility.... In [Betty A.'s] case, she was not highly suggestible. She maintained what she perceived as the truth. That helps me as a guideline to go on with my questioning.... When I'm looking for a child that's been coached, I'm looking for more—either a street language or even maybe the correct terminology for genitalia, which she did not have or give me. Her knowledge of sexual acts seemed age appropriate.... To my opinion, she demonstrated an appropriate level of anxiety, meaning her emotion did reflect the trauma that she was reporting[.] ... *So, it was a very credible statement to me as far as those components that I look for.*

(emphasis added). The second incident occurred after the State asked the following: "Was there anything ... she said or her behavior or demeanor that would signal to you that there was something wrong with her statement, that there may be some falsity to it?" Ms. Brachna responded: "Not that I could tell. There was not what I would term as motive for her to give me that."

The appellant's trial attorney, however, did not object to the admission of the above statements nor did the trial judge give a cautionary instruction.[8] Therefore the admission of this testimony must invoke the plain error doctrine before we will reverse on this ground. As we previously stated, in order "[t]o trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. pt. 7, *Miller, supra.*

In the case before us, Ms. Brachna admitted, on cross-examination, that if a child were indeed lying, she would have no way of knowing, thereby neutralizing her prior testimony which suggested that she believed Betty A.'s allegations to be true. Thus, if Ms. Brachna's testimony on direct examination was error, such error did not "seriously affect[ ] the fairness, integrity, or public reputation of the judicial proceedings." Syl. pt. 7, *Miller, supra. See State v. Folse,* 623 So.2d 59 (La.Ct.App.1993) (The expert testified, without objection, on direct examination that he believed the victim was telling the truth about having been sexually abused; however, the court found that this did not violate rule 608 of the rules of evidence because the defendant's cross-examination corrected the direct testimony by making clear that the expert could not say whether or not the victim was telling the truth). *Cf. United States v. Rosales,* 19 F.3d 763 (1st Cir.1994) (In a sexual abuse case the expert's testimony implicitly sent a message to the jury that the children had testified truthfully; however, review pursuant to the plain error doctrine was not warranted because the jury was presented with expert testimony which directly contradicted the objectional testimony and because the trial court instructed the jury that they were free to reject the opin-

---

8. The trial judge did in his charge to the jury give the following instruction submitted by the appellant:

The jury is instructed that the rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions. An exception to this rule exists as to those whom we call 'expert witnesses.' Witnesses who, by education and experience, have become expert in some art, science, profession, or calling, may state their opinions as to relevant and material matter, in which they have been qualified to be

expert, and may also state their reasons for the opinion.

You should consider each expert opinion received in evidence in this case, and give it such weight as you may think it deserves. If you should decided [sic] that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reason given in support of the opinion is not sound or if you feel that it is outweighed by other evidence, you may disregard the opinion entirely.

ions of the experts); *United States v. Provost*, 875 F.2d 172 (8th Cir.1989), *cert. denied*, 493 U.S. 859, 110 S.Ct. 170, 107 L.Ed.2d 127 (1989) (The expert's testimony that two incidents described by the victim of a sexual assault " 'both occurred' " was an isolated statement which did not constitute reversible error because it was harmless); *Toledo, supra* (An expert's statement in a case in which a child was kidnapped and sexually assaulted that the child's consistency in her story was " 'consistent with a high likelihood that this occurred' " did not warrant review under the plain error doctrine because it is a close call and therefore not an obvious error affecting the fundamental fairness of the trial). Accordingly, because the appellant's trial counsel clarified that Ms. Brachna would have no idea whether a child was lying, the admission of Ms. Brachna's testimony regarding whether Betty A.'s allegations were truthful, if error, did not "seriously affect[ ] the fairness, integrity, or public reputation of the judicial proceedings" thereby implicating review pursuant to the plain error doctrine. Syl. pt. 7, *Miller, supra.*

### C.

Although the appellant's brief is unclear, it appears that the appellant contends that the admission of expert testimony based upon a child sexual abuse profile is error. More specifically, the appellant asserts that the theory that sexually abused children manifest

particular identifiable characteristics is not supported by accepted medical or scientific opinion as is required by *W.Va.R.Evid.* 702. *See* syl. pt. 2, *Wilt v. Buracker*, 191 W.Va. 39, 443 S.E.2d 196 (1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 2137, 128 L.Ed.2d 867 (1994) (This Court outlines how the admissibility of expert testimony should be analyzed pursuant to *W.Va.R.Evid.* 702).

▉▉▉▉▉▉ However, as the appellant concedes, this Court held the following in syllabus point 7 of *Edward Charles L., supra*, in relevant part, regarding the admission of expert testimony on the profiles of child sexual abuse victims:

> Expert psychological testimony is permissible in cases involving incidents of child sexual abuse and an expert may state an opinion as to whether the child comports with the psychological and behavioral profile of a child sexual abuse victim, and may offer an opinion based on objective findings that the child has been sexually abused.

We decline to revisit our holding in *Edward Charles L., supra.*[9] Accordingly, the admission of Ms. Brachna's testimony regarding the psychological and behavioral profile of a child sexual abuse victim was not error.[10]

### IV.

The appellant asserts that he was denied his right to effective assistance of counsel under the sixth amendment to the *United States Constitution* and under Article III, § 14 of the *West Virginia Constitution.*

**9.** We recognize that the admission of expert testimony regarding the child sexual abuse profile is a disputed point. Justice Miller has written a very detailed dissent to *Edward Charles L., supra,* regarding this issue. However, the majority opinion in *Edward Charles L.,* which authorizes the admission of such testimony, has not been overruled.

**10.** Although it is not clear, the appellant also appears to argue that Ms. Brachna did not provide a basis for her knowledge of the sexual assault profile. However, as the State points out, *W.Va.R.Evid.* 705 does not require the expert *to disclose the underlying facts or data which* support his or her opinion unless the trial court requires the disclosure or unless during cross-examination he or she is asked to disclose that information:

> **Rule 705. Disclosure of Facts or Data Underlying Expert Opinion.** The expert may testify in terms of opinion or inference and give

reasons therefor without first testifying to the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

Moreover, appellant's assertion that Ms. Brachna's one-time interview with Betty A. was insufficient to enable Ms. Brachna to form an expert opinion, and appellant's assertion that Ms. Brachna failed to conduct a full-scale psychological and developmental evaluation of the child and underlying family dynamics are more appropriately explored through cross-examination which allows the trier of fact to weigh the credibility of the expert's opinion rather than on appeal. *Cf.* 2 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers,* § 7–2(A)(1) at 28 (3d ed. 1994) ("Should the [expert] witness later fail to adequately define or describe the relevant standard of care, opposing counsel is free to explore that weakness in the testimony. The trier of fact may then choose to discount the testimony." (citations omitted)).

We recently explained why addressing ineffective assistance of counsel claims on direct appeal is usually inappropriate: "In cases involving ineffective assistance on direct appeals, intelligent review is rendered impossible because the most significant witness, the trial attorney, has not been given the opportunity to explain the motive and reason behind his or her trial behavior." *Miller,* at 14–15, 459 S.E.2d at 125–26 (footnote omitted). *See also State v. Triplett,* 187 W.Va. 760, 771, 421 S.E.2d 511, 522 (1992) ("it is the extremely rare case when this Court will find ineffective assistance of counsel when such a charge is raised as an assignment of error on a direct appeal"). When addressing an ineffective assistance of counsel claim, however, the following analysis should be used:

> 5. In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

> 6. In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

Syl. pts. 5 and 6, *Miller, supra.*

In the case before us, the appellant asserts that his trial counsel was ineffective because he, *inter alia,:* (1) failed to call character witnesses or any other witnesses other than the appellant; (2) failed to object to Mr. Pace's testimony which was previously discussed in this opinion; (3) failed to object to Ms. Brachna's testimony on whether Betty A.'s allegations against the appellant were true; (4) failed to call an expert who would attest that appellant's psychological profile would suggest that he did not commit the crimes charged; (5) failed to have the trial court give a cautionary instruction that the testimony of Ms. Riley, who, as we previously stated, was qualified as an expert on abused and assaulted children, regarding the hearsay statements made by Betty A., was only being offered to show the basis of her opinion and was not being offered to support the truth of what Betty A. said; (6) failed to request that Betty A. undergo psychological evaluation in order to see if there were psychological problems which may make her testify falsely; (7) failed to offer a jury instruction which stated that Betty A.'s testimony should be scrutinized with caution since it was uncorroborated; and (8) failed to offer any evidence of mitigating circumstances at appellant's sentencing hearing.

However, as the State points out, there may have been tactical reasons for appellant's trial counsel's lack of action. For instance, there may not have been any witnesses who could testify as to appellant's character pursuant to W.Va.R.Evid. 404(a)(1) [11] nor may there have been any evidence of mitigating circumstances to offer at appellant's sentencing hearing. Our review of the record does not reveal "whether, in light of all the circumstances, the identified acts or omissions [of the appellant's trial counsel] were outside the broad range of professionally competent assistance ... [without] engaging in hindsight or second-guessing of [appellant's trial counsel's] strategic decisions." Syl. pt. 6, in part, *Miller, supra.* As we stated in *Miller,* at 17, 459 S.E.2d at 128, "[i]t is apparent that we intelligently cannot determine the merits of this ineffective assistance claim without an adequate record giving trial counsel the courtesy of being able to explain his trial actions." Accordingly, we decline to further address this issue on direct appeal.

## V.

The appellant asserts that the trial judge violated *ex post facto* principles

---

**11.** *W.Va.R.Evid.* 404(a)(1) states, in relevant part, that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving that he or she acted in conformity therewith on a particular occasion, except: (1) Character of Accused.—Evidence of a pertinent trait of his character offered by an accused, or by the prosecutor to rebut the same[.]"

found in *W.Va. Const.* art. III, § 4 and *U.S. Const.* art. I, § 10 [12] by sentencing him to serve a term of not less than fifteen nor more than thirty-five years in prison for sexual assault pursuant to *W.Va.Code,* 61–8B–3(b) which was effective on July 1, 1991. The appellant contends that the 1984 version of *W.Va.Code,* 61–8B–3(b), which provides for a term of "not less than fifteen nor more than twenty-five years[,]" is the applicable *Code* section because the indictment charges that he committed the crimes in 1989.

Similarly, on the incest charges, the appellant was sentenced to a prison term of not less than five years nor more than fifteen years pursuant to *W.Va.Code,* 61–8–12(c) which was effective in 1991. In that the appellant was charged with committing incest in 1989, the appellant contends that he should have been sentenced according to the 1986 version of *W.Va.Code,* 61–8–12(c) which provides for a term of not less than five years nor more than ten years.

This Court held the following in syllabus points 6 and 7 of *State ex rel. Collins v. Bedell,* 194 W.Va. 390, 460 S.E.2d 636 (1995):

6. 'Under *ex post facto* principles of the United States and West Virginia Constitutions, a law passed after the commission of an offense which increases the punishment, *lengthens the sentence* or operates to the detriment of the accused, cannot be applied to him.' Syl. pt. 1, *Adkins v. Bordenkircher,* 164 W.Va. 292, 262 S.E.2d 885 (1980).

7. A procedural change in a criminal proceeding does not violate the *ex post facto* principles found in the *W.Va. Const.* art. III, § 4 and in the *U.S. Const.* art. I, § 10 unless the procedural change alters the definition of a crime so that what is currently punished as a crime was an innocent act when committed; deprives the accused of a defense which existed when the crime was committed; or *increases the punishment for the crime after it was committed.*

(emphasis added). Clearly, applying the 1991 versions of *W.Va.Code,* 61–8B–3(b) and 61–8–12(c) increased the appellant's punishment, thus, violating the *ex post facto* princi-

ples found in the *W.Va. Const.* and *U.S. Const.* Accordingly, we reverse the sentences imposed upon the appellant and remand this case to the circuit court for resentencing in accordance with this opinion.

## VI.

In summary, we reverse appellant's sentences on the sexual assault counts and incest counts, and remand this case to the circuit court for resentencing in accordance with this opinion. Otherwise, we affirm the appellant's conviction.

Affirmed, in part; reversed, in part; and remanded.

BROTHERTON and RECHT, JJ., did not participate.

FOX, Judge, and MILLER, Retired Justice, sitting by temporary assignment.

MILLER, Retired Justice, and CLECKLEY, J., concur, in part, and dissent, in part, for the same reasons stated by Justice MILLER in his dissent in *State v. Edward Charles L.,* 183 W.Va. 641, 398 S.E.2d 123 (1990).

---

12. The *W.Va. Const.* art. III, § 4 states, in relevant part: "No ... ex post facto law ... shall be passed." The *U.S. Const.* art. I, § 10 provides, in relevant part: "No State shall ... pass any ... ex post facto Law[.]"