400 S.E.2d 853

**STATE of West Virginia**

v.

**James McCLURE.**

**No. 19436.**

Supreme Court of Appeals of West Virginia.

Dec. 19, 1990.

Joseph A. Colosi, Welch, for James McClure.

Roger W. Tompkins, Atty. Gen., Thomas J. Gillooly, Sr. Deputy Atty. Gen., Charleston, for State.

PER CURIAM:

The defendant in this proceeding, James McClure, was convicted on three counts of first-degree sexual assault and sentenced to three concurrent terms of not less than fifteen nor more than twenty-five years in the State penitentiary. On appeal, he claims that the trial court improperly impaneled the jury and erred in failing to disqualify a prospective juror for cause. He also claims that the trial court erred in making evidentiary rulings, in refusing to give his proffered instruction on sexual misconduct, and in failing to declare a mistrial because of emotional displays of the prosecutrix before the jury. This Court has reviewed the defendant's assertions and can find no reversible error. The judgment of the circuit court is, therefore, affirmed.

The evidence adduced during the defendant's trial indicated that around Christmas, 1986, C.D., a ten-year-old friend of the defendant's daughter, Amy McClure, spent the night at the defendant's house. According to C.D., during that night the defendant encouraged her to engage in a sexual act with him. C.D. told no one about what had happened, and approximately two weeks later she revisited the defendant's house. During that visit, according to her story, the defendant engaged in sex with her in his truck. Some months later, according to C.D., the defendant again engaged in sexual activity with her while she was helping him and his young daughter clean his house.

During the October, 1987, term of the Circuit Court of McDowell County, a grand jury indicted the defendant on six counts of first-degree sexual assault for the acts enumerated, as well as for other acts which C.D. claimed the defendant had committed.

Trial was scheduled for July 21, 1988, and on that day the trial court allowed the parties to engage in *voir dire* examination of the Veniremen. The defendant, however, was not prepared for trial because of the absence of a material witness, and the trial was reset for August 17, 1988. The defendant was tried on that date and subsequently convicted.

■ The defendant's first assertion on appeal is that the trial court denied his right to due process of law by impaneling the jury which was to try him three weeks prior to trial. The defendant argues that due process requires trial by a fair and impartial jury, and he indicates that the purpose of *voir dire* is to select jurors who can render a fair and impartial verdict. He suggests that by impaneling the jury three weeks prior to trial, the trial court created an opportunity for bias and prejudice to invade the minds of the jurors.

■ This Court has recognized that the right to trial by an impartial jury is, in a criminal case, a fundamental right guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, as well as guaranteed by the State Constitution. *State v. Peacher*, 167 W.Va. 540, 280 S.E.2d 559 (1981). And the question of whether a jury is impartial is dependent upon whether the jurors are free from bias or prejudice either for or against the accused. *See, e.g., State v. Pratt*, 161 W.Va. 530, 244 S.E.2d 227 (1978); *State v. Hatfield*, 48 W.Va. 561, 37 S.E. 626 (1900). In conjunction with this, the Court stated in

syllabus point 3 of *State v. Crouch*, 178 W.Va. 221, 358 S.E.2d 782 (1987), that:

"The object of the law is, in all cases in which juries are impaneled to try the issue, to secure men for that responsible duty whose minds are wholly free from bias or prejudice either for or against the accused...." Syl. pt. 1, in part, *State v. Hatfield*, 48 W.Va. 561, 37 S.E. 626 (1900).

■ To insure that prospective jurors are free from bias or prejudice, the Court has recognized that parties have wide latitude in engaging in *voir dire* examination of such jurors. *State v. Peacher, supra.* However, the resolution of questions relating to the qualification of jurors is left to the discretion of the trial court and will not be disturbed on appeal, absent an abuse of discretion. *State v. Crouch, supra.* Further, in the absence of showing that a jury was not impartial, an appellate court should not disturb the discretion exercised by the trial court in determining the question of eligibility of the members of the jury to serve and should not reverse its finding that the jurors were free from bias, prejudice, and partiality and were competent to serve. *State v. Carduff*, 142 W.Va. 18, 93 S.E.2d 502 (1956).

In the present case, the trial court afforded the parties an opportunity to engage in wide-ranging *voir dire* examination of the prospective jurors on July 21, 1988. Further, when he continued the case, the trial judge carefully cautioned the veniremen not to engage in activities which would potentially affect their impartiality.[1]

While the defendant asserts that he was concerned about the impartiality of the venire at the time it was reconvened, his counsel made no proffer indicating that any of the jurors were actually biased or prejudiced at that time, and he in no way vouched the record on this point.

As indicated by the authorities cited, the real question raised by the defendant's assignment relating to due process is not whether there is a mere possibility that the jurors were biased or prejudiced, but whether actual bias or prejudice has been shown on the record.

While the delay between the impaneling of the jury and the time of trial might suggest the possibility of prejudice intruding, the defendant made no attempt to show the trial court, and has made no attempt to show this Court, that the delay caused actual bias or prejudice. He has identified no particular juror who was allegedly biased or prejudicial as a result of the delay; he has not shown how any juror was affected as a result of the delay; and he has not shown any contact by a juror during the delay which could have resulted in prejudice. Finally, the record fails to show that on August 17, 1988, prior to trial, he made an effort to elicit a showing of prejudice.

Under the circumstances, this Court cannot find that the trial court erred in proceeding to trial with the jury which had been previously and properly selected.

■ In conjunction with the selection of the jury, the defendant also claims that the trial court erred in failing to disqualify one of the prospective jurors, Betty Leslie, for cause. Mrs. Leslie was married to Hubert C. Leslie, who was the Chief of Police of Welch, West Virginia. At the time of the selection of the jury, Mr. Leslie was involved in a lawsuit involving the City of Welch for police brutality. Also, at the time of trial the defendant's attorney was representing Fanning Funeral Home of

---

1. Prior to releasing the veniremen, the judge instructed them:

   Now in the meantime, until you are brought in to hear this matter, if there's anything in the news media,—that's radio, television or newspaper,—please do not listen to it or read about it. Now if anyone attempts to discuss this matter with you, you advise them immediately that you're on this panel from which the jury is to be selected and you will not discuss it with them, say anything to them, and if they persist or try to, then you advise the court when you come back. I don't want you to even discuss it among yourselves. Now I know your husband or wife, if you have them, may ask you about it. Well, you can tell them the judge told you not to discuss it with them. In other words, we want you to come back in the same frame of mind as you're now in. Know nothing about it. Not been discussed with you.

Welch in a civil suit against Mr. Leslie, and defense counsel was actively involved in the garnishment of Mr. Leslie's wages.

Because of these circumstances, the defendant moved that Mrs. Leslie be disqualified for cause. The trial court overruled that motion, and the defendant was required to exercise one of his peremptory challenges to remove Mrs. Leslie from the jury panel.

■ In syllabus point 6 of *State v. Beckett*, 172 W.Va. 817, 310 S.E.2d 883 (1983), this Court stated that:

A prospective juror's consanguineal, marital or social relationship with an employee of a law enforcement agency does not operate as a per se disqualification for cause in a criminal case unless the law enforcement official is actively involved in the prosecution of the case. After establishing that such a relationship exists, a party has a right to obtain individual voir dire of the challenged juror to determine possible prejudice or bias arising from the relationship.

The Court also indicated that disqualification of an individual related to a law enforcement officer should not be based upon any *per se* rule, but on the fact that the juror indicated, in response to *voir dire* questions, that he would tend to favor the testimony of law enforcement or prosecutorial officials. *See State v. Archer*, 169 W.Va. 564, 289 S.E.2d 178 (1982).

In the present case, prospective juror Leslie was not herself a law enforcement officer, but was married to a law enforcement officer. As indicated in *Beckett*, it was appropriate that the trial court grant the defense the right to obtain individual *voir dire* of Mrs. Leslie to determine whether possible prejudice or bias arose from her relationship. The trial court allowed that *voir dire*, and during the *voir dire* Mrs. Leslie repeatedly stated that she could listen to the evidence and make her decision based on the law, without prejudice or bias. Upon the basis of her representations, the trial court made the determination that she did not harbor prejudice or bias and refused to disqualify her *per se*

because of her relationship to a law enforcement officer.

As a subcontention, the defendant claims that, because of the law suits filed against her husband, Mrs. Leslie was prejudiced against him and should have been disqualified for cause.

■ Under the general rules governing challenges for cause, the test is whether a juror can render a verdict without bias or prejudice, solely on the evidence and under the instructions of the court. *State v. Deaner*, 175 W.Va. 489, 334 S.E.2d 627 (1985); *State v. Wilson*, 157 W.Va. 1036, 207 S.E.2d 174 (1974). As previously indicated, Mrs. Leslie repeatedly stated, without hesitation, that she could listen to the evidence and make a determination based on the court's instructions. On being questioned about the actions brought by defense counsel against her husband, relating to the garnishment of wages and the police brutality case, Mrs. Leslie stated unequivocally that her husband had not discussed either case with her and that, although she had heard her husband mention defense counsel's name, she had no knowledge concerning the pending actions.

This Court believes that, given the fact that Mrs. Leslie revealed on *voir dire* that she could render a verdict solely on the evidence and the court's instructions, and given the fact that *voir dire* suggested that Mrs. Leslie lacked any detailed and definite knowledge of the defendant's relationship with her husband, the defendant has failed to establish that the trial judge abused his discretion in refusing to strike Mrs. Leslie for cause.

■ The defendant's next assertion involves the fact that the State adduced from T.D., the mother of the prosecutrix, C.D., evidence that on June 21, 1987, C.D. told her that she had been sexually involved with the defendant. Among other things, Mrs. D. was allowed to testify that approximately three weeks after one of the incidents, the defendant had made her daughter suck his penis. Counsel for the defendant objected and requested that the court instruct the jury to disregard Mrs. D.'s

testimony. However, the trial court overruled the motion.

On appeal, the defendant claims that the testimony of Mrs. D. was inadmissible under the prompt complaint rule set forth in *State v. Murray*, 180 W.Va. 41, 375 S.E.2d 405 (1988). In that case, the Court stated in syllabus point 3 that:

> Out-of-court statements made by the victim of a sexual assault may not be introduced by a third party unless the statements qualify as an excited utterance under Rule 803(2) of the West Virginia Rules of Evidence.

In the more recent case of *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990), the Court examined a situation where a mother testified to extrajudicial statements made by her son involving sexual assaults. The testimony was adduced principally to explain why the mother took the children to a psychologist. It was not admitted for the purpose of proving the truth of the matter asserted. The children were present in court and testified. The Court concluded that the testimony was admissible and that the trial court did not err in admitting it. In reaching this conclusion, the Court stated:

> It is extremely important to recognize that in the defendant's trial, each child was present, testified in court, and was cross-examined by defense counsel. Furthermore, neither the mother nor the psychologist added anything substantive to the children's testimony. It would cause us grave concern as to the propriety of the mother's testimony if the children gave a barebones or sketchy account of what occurred, and then the mother was permitted to expand upon or add detail and substance to such testimony through the children's extra-judicial statements. Such was not the case here. Judge Weinstein and Professor Berger have written that "[t]he availability of the declarant at trial vitiates the main concern of the hearsay rule, which is the lack of any opportunity for the adversary to cross-examine the absent declarant."

This Court believes that the present case is sufficiently similar to that of *State v. Edward Charles L., Sr., Id.*, to allow the introduction of the testimony of the prosecutrix' mother. It appears that the principal purpose for admitting the evidence was to show why the prosecutrix' mother took the prosecutrix to a psychologist and a pediatrician. As in the case of *Edward Charles L., Sr., supra, Id.*, the victim was present during trial, and she testified in court. The testimony of her mother did not add anything to her testimony regarding her relationship with the defendant.

■ Another of the defendant's assignments of error centers on the testimony of Miss Jamie Barber, a rebuttal witness for the State. The prosecution asked her whether she had ever seen the defendant wearing boxer shorts. Defense counsel objected to the testimony on the ground of relevancy. The trial court overruled the motion. Defense counsel then said: "Your honor, it goes to the motion that the Court has ruled on before," an apparent reference to a motion *in limine*. On appeal, the defendant claims that the evidence constituted evidence of other bad acts on the part of the defendant and that the trial court improperly allowed it, in view of the rule *in limine* restricting such testimony.

Prior to trial, the trial court, in response to the defendant's motion *in limine* had ruled:

> "[I]t is hereby ADJUDGED and ORDERED that Defendant's Motion be granted and that the State shall not present any evidence in this case of other similar acts not charged in the indictment with C... D..., nor any other uncharged misconduct with persons other than C... D..., nor any other evidence of similar bad acts by the defendant for which he is not charged in this indictment."

In the motion *in limine* the defendant had moved that the State be precluded from adducing evidence that: "the defendant committed any criminal acts with other persons for which he has not been charged and ... evidence of any other wrongful acts or alleged wrongful acts, similar to those which he is charged with."

In this Court's view, the testimony about which the defendant complains does not fall within the scope of the rule *in limine*. The clear impact of the motion and rule *in limine* was to exclude evidence of other criminal acts and analogous wrongs. The wearing of boxer shorts, and even being seen wearing boxer shorts, is not, absent some lascivious display, a criminal act and is not analogous to the criminal acts for which the defendant was charged.

■ In the course of the trial, defense counsel attempted to question Deborah F. Tankersley, another witness called by the State, regarding bias and prejudice against the defendant. The trial court refused to allow the examination. On appeal, the defendant claims that the trial court's refusal to allow the cross-examination violated his right under the Sixth Amendment to confront and cross-examine a witness against him.

The defendant argues that his attorney intended to show that Ms. Tankersley, as an employee of the Department of Human Services, had worked with the police officer who investigated this case and that she had refused to cooperate and share information with defense counsel prior to trial.[2]

■ Regarding such objections this Court stated, in syllabus point 1 of *Horton*

*v. Horton*, 164 W.Va. 358, 264 S.E.2d 160 (1980), that:

If a party offers evidence to which an objection is sustained, that party, in order to preserve the rejection of the evidence as error on appeal, must place the rejected evidence on the record or disclose what the evidence would have shown, and the failure to do so prevents an appellate court from reviewing the matter on appeal.

The failure of a party to preserve the rejected evidence essentially precludes this Court from determining whether the rejection constitutes reversible error. *See State v. James Edward S.*, 184 W.Va. 408, 400 S.E.2d 843 (W.Va.1990); *Horton v. Horton, Id.; State v. Messinger*, 163 W.Va. 447, 256 S.E.2d 587 (1979); *State v. Joe*, 105 W.Va. 281, 142 S.E. 250 (1928).

In the present case, the defendant failed to vouch the record and failed to preserve the evidence otherwise. In the absence of vouching, this Court cannot determine whether the court's ruling was prejudicial, and in line with the ruling in syllabus point 1 of *Horton v. Horton, supra,* the Court believes that it has been effectively precluded from reviewing the question presented by the defendant.

■ At the conclusion of the trial, the defendant offered an instruction on third-

---

2. The defendant's assignment of error on this point grows out of the following cross examination of Ms. Tankersley by defense counsel:

Q. You work for the Department of Human Services. I don't know whether you still do, but at the time of this investigation you worked for the Department of Human Services, didn't you?
A. Yes, sir.
Q. And I think you conducted a joint investigation with Deputy Hicks?
A. I conducted my own investigation for the Department.
Q. And Deputy Hicks accompanied you?
A. At times for interviews.
Q. And he had access to your information, didn't he?
A. At times I shared some of my information with him when it was required by their investigation.
Q. And you even took statements for Deputy Hicks?
A. No. I did not.
By Mr. Bell: Your Honor, I object. This is going far from the scope of the evidence.

By the Court: We'll sustain that. Mr. Colosi, this is going beyond the range and the Court is restricting it now.
By Mr. Colosi: Your Honor, to state the reason I want to go into this is that she is a witness, even though she's a rebuttal witness.
By the Court: Mr. Colosi, rebuttal witnesses are restricted to rebut certain evidence put on during examination in chief and the Court doesn't recall that question coming up at any time during the evidence in this case.
By Mr. Colosi: But even a rebuttal witness's character and motive are in issue, are they not?
By the Court: No, Sir.
By Mr. Colosi: Bias and prejudice?
By the Court: Not in that respect, it's not. No, sir.
By Mr. Colosi: I just want to get it clear for the record. I'd like to question the witness about factors involving bias and prejudice of the witness, and would like the Court's ruling as to whether I'm allowed to go into that.
By the Court: No, Sir. You're not.

degree sexual abuse, which he believed was a lesser included offense in first-degree sexual assault. The trial court refused to give this instruction and instructed the jury only on first-degree sexual assault and first-degree sexual abuse.

On appeal, the defendant claims that the trial court's rejection of his instruction on third-degree sexual abuse was erroneous. He argues that third-degree sexual abuse was essentially a lesser included offense in his case and that the trial court's refusal to give an instruction on it constituted prejudicial error.

In *State v. Neider*, 170 W.Va. 662, 295 S.E.2d 902 (1982), this Court examined the question of when a lesser included offense instruction was required in a criminal case. The Court held that when the defendant has not shown any conflict in proof as to the elements of the greater offense that are not part of the lesser offense, he is not entitled to such an instruction. In syllabus point 1 of *Neider*, the Court stated:

"The test of determining whether a particular offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the greater offense without first having committed the lesser offense. An offense is not a lesser included offense if it requires the inclusion of an element not required in the greater offense." Syllabus Point 1, *State v. Louk*, 169 W.Va. 24, 285 S.E.2d 432 (1981).

The Court then went on to set forth in syllabus point 2 the rule which governs the question in the present case. In that syllabus point, the Court stated:

Where there is no evidentiary dispute or insufficiency on the elements of the greater offense which are different from the elements of the lesser included offense, then the defendant is not entitled to a lesser included offense instruction.

In the present case, the defendant was charged with first-degree sexual assault, and he claims that he was entitled to a lesser included offense instruction on third-degree sexual abuse. The statute govern-

ing first-degree sexual assault provides that:

A person is guilty of sexual assault in the first degree when:

\* \* \* \* \* \*

(2) Such person, being fourteen years old or more, engages in sexual intercourse or sexual intrusion with another person who is eleven years old or less.

*W. Va. Code*, 61–8B–3(a)(2). The statute establishing sexual abuse in the third degree provides:

A person is guilty of sexual abuse in the third degree when he subjects another person to sexual contact without the latter's consent, when such lack of consent is due to the victim's incapacity to consent by reason of being less than sixteen years old.

*W. Va. Code*, 61–8B–9(a).

An examination of the statutes shows that to convict for first-degree sexual assault, the State must prove three elements which are distinct from those required for conviction of third-degree sexual abuse. The State first must prove that at the time of the commission of the crime the victim was younger than twelve years of age. In the present case, it was an uncontested fact that C.D. was younger than twelve at the time of the crimes charged. Secondly, the State must prove that the defendant was fourteen years of age or more at the time he committed the crime. This fact was also uncontested in the present case. Finally, the State must prove the type of sexual conduct was sexual intercourse or sexual intrusion to establish first-degree sexual assault. For third-degree sexual abuse, the defendant must have subjected the victim to sexual contact.

The defendant neither proffered evidence nor asserted any defense which would tend to indicate that he engaged in sexual contact instead of sexual intercourse or sexual intrusion. Instead, he suggested that he engaged in no sexual activity of any type with the victim.

As indicated in *State v. Neider*, where the defense raised by a defendant would entitle him to an acquittal on both the

greater and lesser offenses, he is not entitled to a jury instruction on the lesser offense. This Court believes that the defense raised by the defendant, that he engaged in no sexual activity with the victim whatsoever, would have entitled him to an acquittal on both the greater and lesser offenses if the jury had believed his evidence. The jury apparently did not believe that evidence and found him guilty. In view of the nature of the defense, the lower court correctly concluded that he was not entitled to the lesser included offense instruction which he requested.

During closing arguments in the case, C.D., the prosecutrix, sat in the front row in front of the jury and, according to the defendant, openly wept. The defendant argues that this weeping was the result of a flagrant attempt by the State to elicit sympathy from the jury and was designed to pressure the jury to return a verdict of guilty.

Defense counsel moved for a mistrial on the basis of what going on, and the trial court denied the motion. On appeal, the defendant argues that the trial court's refusal to grant a mistrial was contrary to the defendant's right to a trial by an impartial jury and was erroneous.

In *State v. Richey,* 171 W.Va. 342, 298 S.E.2d 879 (1982), the Court discussed the question of when the presence and activities of spectators in a courtroom during trial would prejudice the defendant's rights. In that case, the defendant, who was of student age, claimed that the presence of a group of high school students at his trial prejudiced his defense. He argued that the presence of the students might have psychologically influenced the jurors. This Court rejected the defendant's argument and stated that the ultimate question in such cases is whether, if the trial is left open, there is a clear likelihood that there will be irreparable damage to the defendant's right to a fair trial. In the later case of *State v. Franklin,* 174 W.Va. 469, 327 S.E.2d 449 (1985), the Court ruled that where ten to thirty members of an organization dedicated to stiffer penalties for drunk drivers advertised their presence and association by wearing badges in a courtroom throughout a trial constituted reversible error where fourteen of the twenty members of the jury venire knew of the organization's activities and goals.

Obviously, a distinguishing feature between the *Richey* and *Franklin* cases was the fact that in the one case the presence and goals of the individuals were prominent and clear to the jury and clearly aimed at influencing the jury. In the other case, the presence and goals of the students were far less clear and the intent to influence the jury was less apparent.

In the present case, the evidence relating to the victim's weeping tended to show that there was a solitary girl weeping silently in the courtroom. She apparently disturbed no one, and defense counsel apparently did not know of the silent weeping until an unidentified informant told him about it. There is also evidence that the defendant's child cried in the courtroom during closing arguments. The judge himself stated that he did not hear anything that disturbed the court and that he knew of nothing unusual that was going on in the court. The judge, in making his ruling, indicated that he had balanced the right to a public trial against factors creating potential disruption in the courtroom. He concluded that the disruption was nonexistent or minimal and, therefore, refused to declare a mistrial.

This Court has recognized that the decision to grant a mistrial and the conduct of a trial in general are within the sound discretion of the trial judge. *See State v. Armstrong,* 179 W.Va. 435, 369 S.E.2d 870 (1988); *State v. Williams,* 172 W.Va. 295, 305 S.E.2d 251 (1983). There are valid reasons for the conduct of an open trial and, given the record in the present case, the Court does not believe that the defendant can establish that the victim's conduct was of such an overt, outrageous, and inflammatory character to warrant the conclusion that the jury was influenced by what occurred or that the trial judge abused his discretion by refusing to declare a mistrial.

For the reasons stated, the judgment of the Circuit Court of McDowell County is affirmed.

Affirmed.

**MILLER, Justice, dissenting:**

My dissent goes to the in-court testimony of the victim's mother who recited what her daughter had told her about being sexually abused by the defendant. This conversation occurred some three weeks after the incident. The majority holds these statements to be admissible relying on *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). In Part V of my dissent to that case, I set out at length why I believe such statements are not admissible. Simply put, the statements are hearsay and cannot be placed under any exception to the hearsay rule.