511 S.E.2d 459

**STATE of West Virginia, Appellee,**

v.

**JAMES B., Sr., Appellant.**

**No. 24671.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 23, 1998.

Decided Dec. 10, 1998.

G. Ernest Skaggs, Esq., Skaggs & Skaggs, Fayetteville, WV, Attorney for the Appellant.

Darrell V. McGraw, Jr., Esq., Attorney General, Molly M. McGinley, Esq., Assistant Attorney General, Charleston, WV, Attorneys for Appellee.

PER CURIAM:

This case is before the Court upon the appeal of James B.,[1] Sr., from the July 7, 1995, final order of the Circuit Court of Clay County sentencing the Appellant to not less than one nor more than five years for his conviction of one count of sexual abuse in the first degree and not less than fifteen nor more than thirty-five years for his conviction on one count of sexual assault in the first degree. The Appellant asserts that the trial court committed the following errors: 1) improperly allowed the Appellee to introduce into evidence the hearsay statements of the alleged victim; 2) improperly allowed the Appellee to let its expert psychologist, Olga Gioulis, give her opinion that the children had been sexually abused by the Appellant; 3) improperly allowed the Appellee to use the victim, C.T., as a witness, when it failed to disclose its intention to use him until the trial had begun; and 4) improperly upheld a jury verdict which was against the weight of the evidence. Based upon our review of the record, the parties' briefs and all other matters submitted before this Court, we conclude that the lower court did not err and, accordingly, we uphold the lower court's decision.[2]

## I.

### FACTS

On February 2, 1992, the Appellant was living with his wife Barbara B., his two step-children (the victims in this case), C.T., age 5, and B.T., age 3, as well as the Appellant's two children, T.B., age 2, and J.B., an infant. On February 5, 1992, the Department of Health and Human Resources ("DHHR") entered the home and removed all four children as a result of a physical abuse and neglect proceeding.

The children were placed in the foster home of Brenda and Randy Nichols on February 18, 1992. Within one month of their arrival, Mrs. Nichols found C.T. performing oral sex on his sister, B.T., while his youngest sister, T.B., observed. Upon questioning by Mrs. Nichols as to why he would do this, C.T. responded that "it was a game that they played with mom [3] and Shorty." [4] C.T. described to Mrs. Nichols how the children would get in bed with their mother and the Appellant, watch movies, and then "the kids were made to do this to each other, and then they would do it with mom and Shorty." Mrs. Nichols also testified to observing other sexual behavior between the children on several occasions.

Mrs. Nichols immediately reported this improper sexual activity to the DHHR foster care case worker, Karen Conner. Mrs. Nichols initially requested that the children, or at least C.T., be removed from the home. Ms. Conner asked the Nichols to keep the sibling group together and offered to pay them an additional sum of money. The Nichols ultimately agreed to keep the children together.[5]

According to Mrs. Nichols testimony, C.T. was taken the very next day to be interviewed by DHHR. The children were also taken to the sexual abuse clinic at Women's and Children's Hospital in Charleston, West Virginia. There was no physical evidence of penetration on either child and they both tested negative for venereal disease.

C.T. was interviewed by State Trooper Mark DeBord on March 2, 1993. C.T. revealed to the trooper that someone had

---

1. Consistent with our practice in cases involving sensitive matters, we use the initials of the victim and the victim's family. *See State v. Miller*, 195 W.Va. 656, 659, 466 S.E.2d 507, 510 n. 1 (1995); *State v. Edward Charles L.*, 183 W.Va. 641, 645, 398 S.E.2d 123, 127 n. 1 (1990); *Benjamin R. v. Orkin Exterminating Co., Inc.*, 182 W.Va. 615, 390 S.E.2d 814 n. 1 (1990).

2. Given our decision in upholding the Appellant's conviction, we decline to review the Appellee's cross-assignment of error regarding the timeliness of the Appellant's appeal.

3. The children's mother was also indicted and tried jointly with the Appellant. She was also convicted by the jury of sexual abuse of both C.T. and B.T. Her petition for appeal was refused by this Court on October 10, 1996.

4. The Appellant's nickname was Shorty.

5. This evidence is significant in that the Appellant's defense was that the foster mother fabricated the allegations and coached the victims in order to get increased money from the DHHR, because the DHHR designated the children as having "special needs."

touched his private parts. According to the trooper's testimony, he used anatomically correct dolls with the child. C.T. first unclothed the dolls, then demonstrated to the officer different sexual acts performed by the doll that the child designated as the "Shorty" doll and the doll representing C.T. Trooper DeBord testified that based upon his interview with C.T., he referred the child to Olga Gioulis, a psychologist, for an evaluation.

Ms. Gioulis testified that C.T. told her that the Appellant told the child to "suck his bird." [6] Ms. Gioulis stated that C.T. had indicated to her that the incident had occurred in his mother's bedroom, with his mother present. C.T. also indicated to Ms. Gioulis, through the use of anatomically-correct dolls, that Shorty had sexual intercourse with C.T.'s sister, B.T. Ms. Gioulis further testified that the position of the dolls indicated sexual intercourse, but she could not tell if there was penetration. Additionally, C.T. demonstrated to Ms. Gioulis, again with anatomically-correct dolls, that the Appellant forced him to have oral sex with him, in his mother's presence. Ms. Gioulis testified that C.T. also demonstrated with the dolls that he had oral sex with his mother. Ms. Gioulis testified that the reasons supporting her professional opinion that the children had been sexually abused was that C.T. used phrases such as "[s]uck my bird," even though he was just six years old. The child was also able to demonstrate sexual positions revealing that this young child possessed knowledge of sexual information. Ms. Gioulis testified that "[c]hildren don't usually have knowledge of sexual behaviors at that age [referring to a six-year-old], and they don't usually understand what they [referring to sexual behaviors] are." Finally, Ms. Gioulis gave her professional opinion that C.T. had been sexually abused by the Appellant. [7]

C.T. also testified at trial. The child, who was eight years old at the time of the trial, testified about "the game," which occurred when the Appellant made him play with his sister's "bird" or her "private part." C.T. was also made to play with his mother's and the Appellant's private parts by touching them with his hand. He testified that the Appellant touched his private part using his hand. C.T. also testified that the Appellant had "peed" in his mouth.

The Appellant and the children's mother each testified on his/her own behalf. Both witnesses denied the respective allegations made against them. In addition to offering testimony that the foster care mother, Mrs. Nichols, had fabricated the sexual abuse allegations in order to get more money from the DHHR for caring for the children, the Appellant also attempted to shift the focus to the children's biological father. The Appellant testified that C.T. would use the term "bird" when he returned from visiting with his natural father. There was no other evidence submitted to support this claim. The Appellant also contended that he had never been alone with the children. His wife corroborated the fact that she had never left the children alone with the Appellant.

At the close of all the evidence, the jury convicted the Appellant of one count of sexual assault of C.T. and one count of sexual abuse of B.T.

## II.

### HEARSAY STATEMENTS

The first issue involves the admissibility of hearsay statements that C.T. made to several individuals. The Appellant maintains that several witnesses, including Mrs. Nichols, Trooper DeBord, Karen Conner and Olga Gioulis, testified regarding statements

---

6. The word "bird" was the child's word for penis.

7. Ms. Gioulis first testified that in her profession opinion C.T. was "telling me that he had been sexually abused, and I believed him and felt that some of the things had occurred."

Later, during redirect, the Appellee asked the psychologist:

Q: In your professional opinion, based upon the interview you had with ... [C.T.], is it your opinion that ... [C.T.] was sexually abused by someone called—the man he called Shorty?

A: It is.

Ms. Gioulis also testified that her opinion was that C.T.'s sister, B.T., was also sexually abused, "based upon ... [her] interview with ... [C.T.]."

made by C.T.[8] While the Appellant, citing *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990), acknowledges that hearsay statements may be used to explain why the witness took certain actions, he argues that, in the present case, "the testimony of the foster mother and other witnesses went far beyond using the statements to show why such actions were taken." The Appellant further contends, without any specificity, that the witnesses "were allowed to explain ... [C.T.'s] hearsay statements and add details and substance for which there was no justification." The Appellee argues, however, that, contrary to the Appellant's assertions, the trial court did not err in allowing the Appellee to introduce the victim's statements made to the various individuals. Further, the Appellee argues that none of the witnesses added details or substance to C.T.'s testimony.

In order to determine the issue of whether the child's statements were properly admitted through the testimony of various witnesses, it is helpful to examine each of the witness' testimony separately. First, the trial court concluded that both Brenda Nichols and Trooper DeBord's testimony regarding the child's statements to each of them, respectively, was not hearsay. Brenda Nichols testified that when she questioned C.T. about the inappropriate sexual behavior she witnessed between him and his sister, the child responded by telling her that it was a game that they played with his mother and the Appellant. C.T. also told Mrs. Nichols about how the children would get in bed with the Appellant and C.T.'s mother and were made to perform sexual activities on each other, as well as the Appellant and C.T.'s mother. Trooper DeBord testified to similar statements that C.T. made to him during the course of his investigation. The trooper testified that as a result of these statements, he

referred the child to Olga Gioulis, a psychologist.

In *Edward Charles L.*, a case analogous to the instant one, we addressed the admissibility of statements that the child made to his mother. We upheld the admissibility of the statements under West Virginia Rule of Evidence 803(24), the catch-all exception to the hearsay rule, stating that

> the mother's testimony was properly admitted at trial by the lower court, since the children were present to testify and be cross-examined; the mother added nothing substantive to the children's direct testimony, and primarily related the child's statements not to prove the truth of the matter asserted, but to explain why she took them to the psychologist. . . .

183 W.Va. at 657, 398 S.E.2d at 139. We also noted that "since the defendant claimed maternal coaching of the children, the mother's account of the child's statements to her gave the jury a fuller opportunity to observe her demeanor and her motivations in recounting such statements." *Id.* at 656, 398 S.E.2d at 138. Finally, we concluded that "[t]he statements comport to this hearsay exception and the general rules of evidence because they not only meet the relevancy and probativeness requirements but the fact that the children testified at trial and were subject to cross-examination ameliorates the real risks of admitting hearsay." *Id.*

In the present case, the trial court concluded that the statements were admissible by concluding that the statements were not hearsay.[9] The lower court reasoned that the statements were not being offered to prove the truth of the matter asserted, but rather the statements were admitted solely to show why the foster care mother and the trooper took the respective actions they took concerning the children.[10] The trial court fur-

---

8. The Appellant never pinpoints what hearsay statements were testified to by which witnesses.

9. West Virginia Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." W. Va. R. Evid. 801(c).

10. When the trial judge admitted the statements during Mrs. Nichols' testimony, a lengthy limit-

ing instruction was given to the jury, which made it abundantly clear that the testimony regarding the child's statements was "not offered for the purpose of proving the truth of what the child has said, but for the purpose of showing that the statement was made, and as a consequence of the statement being made, she [Mrs. Nichols] took certain action." Additionally, the trial court also gave a limiting instruction re-

ther instructed the jury to consider the child's statements for that limited purpose only. Because the statements were not offered to prove the truth of the matter asserted, the statements were not hearsay by definition and, therefore, the statements were properly admitted at trial. *See* W. Va. R. Evid. 801(c).

Further, just as in *Edward Charles L.* where we upheld the admissibility of a child's extra-judicial statements where the child was available and testified at trial, the child, in the instant case, testified at trial; neither the foster care mother nor the state trooper added substantively to the child's direct testimony; and the foster care mother was charged by the defense with fabricating the sexual abuse story in order to obtain more funds from the DHHR. *See* 183 W.Va. at 656–57, 398 S.E.2d at 138–39. Thus, this case is sufficiently similar to *Edward Charles L.* for this Court to uphold the admissibility of the statements, as the principal reason for admitting the statements was not to prove the truth of the matter asserted. *See* 183 W.Va. at 657, 398 S.E.2d at 123; *see also State v. McClure*, 184 W.Va. 418, 424, 400 S.E.2d 853, 859 (1990).

■ Next, we consider Karen Conner's testimony and whether statements the child made were improperly admitted through her testimony. A review of the trial transcript reveals that on direct examination,[11] Ms. Conner did not testify regarding any specific statements made to her by the children involved. It was on cross-examination that Ms. Conner was questioned regarding statements made to her by C.T.

■ In syllabus point three of *State v. Bennett*, 183 W.Va. 570, 396 S.E.2d 751 (1990), we restated the well-established principle that " '[a]n appellant or plaintiff in error will not be permitted to complain of error in the admission of evidence which he offered or elicited, and this is true even of a defendant in a criminal case.' " *Id.* at 572, 396 S.E.2d

at 753 (quoting Syl. Pt. 2, *State v. Bowman*, 155 W.Va. 562, 184 S.E.2d 314 (1971)). As the record establishes, the defense elicited testimony regarding C.T.'s statements. Given this fact, the Appellant can not now complain of error in the admission of this evidence. Consequently, there was no error committed by the trial court with regard to this matter.

■ Finally, with regard to statements C.T. made to Ms. Gioulis, the psychologist, because no objection was made by the Appellant to any part of Ms. Gioulis' testimony, we can only review her testimony under the plain error doctrine. As we have previously held, in order "[t]o trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, in part, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

In *Edward Charles L.*, we upheld the admissibility of statements a child made to the family psychologist under West Virginia Rule of Evidence 803(4). *See* 183 W.Va. at 654, 398 S.E.2d at 136. We held that

[t]he following [is] . . . not excluded by the hearsay rule, even though the declarant is available as a witness: . . . (4) Statements for Purposes of Medical Diagnosis or Treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment. W. Va. R. Evid. 803(4).

183 W. Va. at 644, 398 S.E.2d at 126, Syl. Pt. 4.

In the instant case, we conclude that the statements made to the psychologist were properly admitted pursuant to West Virginia

---

garding the limited use of the statements by the jury during Trooper DeBord's testimony.

**11.** Ms. Conner testified that she was present at several interviews with the children and that the statements made by the children were consistent in the different interviews at which she was

present. On direct examination, Ms. Conner did not specifically identify nor give the contents of statements that C.T. had made. Moreover, there was no objection to Ms. Conner's testimony by the Appellant.

Rule of Evidence 803(4) and this Court's decision in *Edward Charles L.* The declarant's motives in making the statements were consistent with promoting treatment and the contents of the statements were reasonably pertinent for the psychologist to diagnosis and treat the child. *See* 183 W.Va. at 644, 398 S.E.2d at 126. Consequently, the trial court did not err in allowing the psychologist to testify regarding statements the child made to her.

## III.

### EXPERT TESTIMONY

■ The next alleged error concerns whether the expert psychologist improperly rendered an opinion that the children had been sexually abused by the Appellant. The Appellant maintains that the expert stated not only that the children had been sexually abused, but also that the Appellant committed the crime. The Appellant asserts that this testimony is precluded under this Court's decision in *Edward Charles L. See* 183 W.Va. 641, 398 S.E.2d 123. In contrast, the Appellee argues that this assignment of error must fail because the Appellant neither objected to any portion of the expert's testimony, nor did the Appellant request a limiting instruction. Further, the Appellant never raised the issue in his motion for a new trial.[12] *See* Syl. Pt. 17, *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974) ("As a general rule, proceedings of trial courts are presumed to be regular, unless the contrary affirmatively appears upon the record, and errors assigned for the first time in an appellate court will not be regarded in any matter of which the trial court had jurisdiction or which might have been remedied in the trial court if objected to there.")

■ In *Edward Charles L.,* we held that

---

12. The Appellee concedes, however, that the psychologist did state that C.T. told her the he had been sexually abused and that she believed him. The Appellee argues that this statement was in response to the Appellee's query as to whether her "professional opinion" was that the children were sexually abused. Pursuant to our decision in *Edward Charles L.,* a psychologist may offer a professional opinion that a child has been sexual-

Expert psychological testimony is permissible in cases involving incidents of child sexual abuse and an expert may state an opinion as to whether the child comports with the psychological and behavioral profile of a child sexual abuse victim, and may offer an opinion based on objective findings that the child has been sexually abused. Such an expert may not give an opinion as to whether he personally believes the child, nor an opinion as to whether the sexual assault was committed by the defendant, as these would improperly and prejudicially invade the province of the jury.

183 W. Va. at 644, 398 S.E.2d at 125, Syl. Pt. 7.

Given that no objection was raised regarding the psychologist's testimony either during the trial or through post-trial motions, the Court must review this under a plain error analysis. *See* Syl. Pt. 7, *Miller,* 194 W.Va. at 7, 459 S.E.2d at 118. This Court was presented with an analogous situation involving a psychologist's testimony regarding the truthfulness of the victim's statements in *State v. Wood,* 194 W.Va. 525, 460 S.E.2d 771 (1995). In *Wood,* the defense counsel failed to object or to request a cautionary instruction concerning the psychologist's statement that the victim's statement that she was sexually assaulted "was a very credible statement to me...." *Id.* at 536, 460 S.E.2d at 782. The psychologist also testified that as far as she observed from the victim's behavior and demeanor, there was no falsity to the victim's statement. *Id.*

We concluded in *Wood* that "because the appellant's trial counsel clarified that ... [the psychologist] would have no idea whether a child was lying, the admission of ... [the psychologist's] testimony regarding whether ... [the victim's] allegations were truthful, if error, did not 'seriously affect[ ] the fairness, integrity, or public reputation of the judicial

---

ly abused when the opinion is "based on objective findings." 183 W.Va. at 644, 398 S.E.2d at 125, Syl. Pt. 7, in part. In *Edward Charles L.,* we did not, however, condone either expert psychological testimony in which an expert's personal opinion that he/she believed the child is offered or expert psychological testimony in which the expert renders an opinion that the defendant committed the sexual assault. *See id.*

proceedings' thereby implicating review pursuant to the plain error doctrine." *Id.* at 537, 460 S.E.2d at 783.

Similarly, in the instant case, during cross-examination of the psychologist, the defense brought out the fact that the child may not have been completely honest with the psychologist, as well as the fact that the child may have been coached to make the statements about sexual abuse which were made. Further, two defense counsel questioned the psychologist extensively about the basis for her professional opinion that the children involved had been sexually assaulted. Finally, the psychologist supported her professional opinion as to why she believed the child through objective criteria. Given the fact that the cross-examination of the psychologist had a "neutralizing" effect on her testimony that she believed C.T.'s allegations to be true, if Ms. Gioulis testimony on direct examination was error, such error did not "seriously affect[ ] the fairness, integrity, or public reputation of the judicial proceedings." *See* Syl. Pt. 7, in part, *Miller,* 194 W.Va. at 7, 459 S.E.2d at 118.

## IV.

### C.T.'S TESTIMONY

■ The next issue is whether the lower court erred in allowing the victim to testify. The Appellant argues that the Appellee failed to disclose to the Appellant that it intended to call C.T., who was one of the victim's, as a witness. The Appellant argues that the Appellee knew of the existence of this child witness from the beginning and should have disclosed its intention to use the witness. The Appellant argues that the defense was surprised by the Appellee's use of this witness and that this witness was highly prejudicial to the defense. The Appellee,

however, contends that the lower court did not err in allowing the victim to testify. The Appellee further asserts that if there is error, it was invited by the Appellant.

The Appellee concedes that it initially did not plan to call the young victim, C.T., to testify. This decision was based upon C.T.'s age, as well as the sensitive nature of the crime. On the first day of trial, however, the Appellee decided to place C.T. on the witness list. This decision was prompted by defense counsel's objection to the admission of statements C.T. made to his foster care mother. The defense counsel argued that the statements should not come in because the child was not going to be called as a witness and, therefore, the defendants were not being afforded their constitutional right to cross-examine their accuser. In order to alleviate the defense objection, the Appellee decided to place the child on the stand. The Appellee immediately informed the defense of the decision. The child was then scheduled to testify the following day, giving both defendants opportunity to prepare cross-examination.

Defense counsel objected [13] to the witness testifying, arguing that the child was a surprise witness.[14] The trial court overruled the objection on the basis that the witness had been available for two years, that the allegations of the crime arose from this witness, that the defense, through a hired investigator who had been working on the case, had plenty of time to interview the witness, and that the defense had access to the police report. The court concluded that because the Appellant had a right to cross-examine his accuser, the testimony would not be excluded.[15]

■ Rule 16 of the Rules of Criminal Procedure requires disclosure of witnesses upon request.[16] When reviewing whether

---

**13.** Defense counsel for the Appellant's wife also moved the lower court to exclude the witness.

**14.** Counsel for the victims' mother acknowledged on the record that the Appellee's decision to have the victim testify was "not intentional."

**15.** The Appellee notes that the Appellant failed to move the lower court for a continuance. Further, counsel for both defendants had the opportunity to and did cross-examine the child. The

Appellee maintains that this opportunity to cross-examine the child alleviates any possible prejudice alleged by the Appellant.

**16.** Rule 16 provides, in pertinent part, that "[u]pon request of the defendant, the state shall furnish to the defendant a written list of names and addresses of all state witnesses whom the attorney for the state intends to call in the presentation of the case in chief ...." W. Va. R.Crim. P. 16(a)(1)(F).

witnesses were not properly disclosed, this Court has held that "[t]he non-disclosure is prejudicial where the defense is surprised on a material issue and where the failure to make the disclosure hampers the preparation and presentation of the defendant's case." Syl. Pt. 1, in part, *State v. Johnson*, 179 W.Va. 619, 371 S.E.2d 340 (1988). The trial court's decision to allow the testimony of the victim is reviewed by an abuse of discretion standard. *See State v. Potter*, 197 W.Va. 734, 746, 478 S.E.2d 742, 754 (1996) ("Our review of a trial court's ruling to admit or exclude evidence if premised on a permissible view of the law ... is only for an abuse of discretion.")

In the instant case, the non-disclosure of the victim as a witness cannot be found to have surprised the defense on any material issue, because the witness was known to the Appellant from the beginning as it was the child's statements that formed the basis for the prosecution against the Appellant. Thus, the Appellant was aware all along of the substance of the victim's statements. Further, considering that the child's testimony was consistent with the prior statements given, we do not find that the addition of this witness hampered the preparation and presentation of the defense. Moreover, the record is clear that the sole purpose for the Appellee's decision to place the child on the witness stand was to alleviate the Appellant's counsel's objection that the Appellant was not being afforded the right to cross-examine his accuser. Given the facts before us, we are at a loss as to how the addition of this witness in this case was prejudicial to the defense. Accordingly, we conclude that the lower court did not abuse its discretion in allowing the child witness to testify.

## V.

### VERDICT NOT SUPPORTED BY THE EVIDENCE

The Appellant's last alleged error, made without any supporting authority, is that the verdict was against the weight of the evidence. The Appellant maintains that most of the evidence consisted of the hearsay statements of C.T., which were testified to by four adult witnesses. The Appellant maintains that there was no valid basis for admitting most of these statements. The Appellant asserts that the only substantive evidence was the testimony of C.T., which at best, can be described as confusing and contradictory. In contrast, the Appellee argues that the jury verdict was supported by the evidence.

The following standard is the legal hurdle a defendant must overcome when challenging the sufficiency of the evidence supporting his conviction:

A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

Syl. Pt. 3, in part, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

From a review of the evidence in this case, it is clear that there was sufficient evidence presented to the jury from which it could find guilt beyond a reasonable doubt. The jury had the opportunity to consider not only the victim's testimony, but the testimony of the victim's foster care mother, the state police officer, the expert psychologist, as well as the case worker for the DHHR. Essentially, what the Appellant requests this Court to do is to reassess the credibility determinations made by the jury. The jury's decision to believe the child victim and not the Appellant, however, is strictly within the province of the jury and will not be disturbed by this Court. *See Guthrie*, 194 W.Va. at 663, 461 S.E.2d at 169, Syl. Pt. 4.

## VI.

## CONCLUSION

Based on the foregoing, the trial court's decision is hereby affirmed.

Affirmed.

Justice McGRAW did not participate.